**SOUTH DIVISION CREDIT UNION,**
**Plaintiff/Appellant,**

v.

**Dorothy McFARLAND,**
**Defendant/Appellee.**

**Nos. 94 C 4613, 93 A 1660 and 93 B 18989.**

United States District Court,
N.D. Illinois,
Eastern Division.

March 10, 1995.

Lauren Newman, Walinski & Trunkett, Chicago, IL, for South Division Credit Union.

Melvin J. Kaplan, Law Offices of Melvin J. Kaplan, Chicago, IL, for Dorothy McFarland.

*MEMORANDUM OPINION AND ORDER*

PLUNKETT, District Judge.

Plaintiff/appellant South Division Credit Union (the "Credit Union") appeals from the decision of the bankruptcy court that it may recover only the $3,500 it lent to defendant/appellee and debtor Dorothy McFarland ("McFarland") on the basis of a false financial statement, rather than the entire amount

915, § 3; 1980 (Adj. S.), c. 919, § 2; T.C.A., § 26-202.]"

McFarland owed to the Credit Union. For the reasons set forth below, we affirm the decision of the bankruptcy court.[1]

## Facts

The facts in this case are undisputed. McFarland was a member of the Credit Union for twenty-four years and obtained a number of loans there. On May 29, 1991, McFarland obtained a loan in the amount of several thousand dollars that was scheduled to mature on February 28, 1995. McFarland always made timely payments on the loans she obtained from the Credit Union. In 1993, those payments were made by automatic payroll deductions.

On May 11, 1993, McFarland applied for a new loan in the amount of $3,500 in order to fix the roof on her house. She still owed approximately $5,700 on the 1991 loan. In the 1993 application, McFarland failed to disclose that she had co-signed a $7,000 note held by the Overland Bond Company on behalf of her brother, and that she owed the Internal Revenue Service $1,500 in taxes from 1990.

In considering all loan applications, the Credit Union uses a debt-to-income ratio limit of forty-five percent. A loan applicant whose debt-to-income ratio is above forty-five percent will not receive a loan, regardless of past credit history. The Credit Union applied this ratio to McFarland's 1993 application. Through the omission of the Overland Bond Company indebtedness and the Internal Revenue Service indebtedness, McFarland's debt-to-income ratio was forty-two percent.[2] As a result, her 1993 loan application was approved. If those debts had been disclosed, her debt-to-income ratio would have been higher than forty-five percent, and the Credit Union would have denied her loan application.

It is also the practice of the Credit Union to consolidate into one loan the monies lent to a member. Thus, in May 1993, the Credit Union gave McFarland a new loan in the amount of $9,257.17, which represented the amount she still owed on the 1991 loan plus the additional $3,500. The new loan was scheduled to mature on May 1, 1998. The 1991 loan was canceled.

McFarland filed a Chapter 7 bankruptcy petition on September 8, 1993. At that time, she owed the Credit Union $8,712.28. The Credit Union filed an adversary complaint objecting to the discharge of any portion of the monies still owed by McFarland. The bankruptcy court held a trial on June 15, 1994, at which McFarland and the Credit Union's collection administrator testified. At the close of the trial, the bankruptcy judge ruled from the bench that only the $3,500, representing the "new money" loaned on the basis of the fraudulent loan application, was non-dischargeable. The Credit Union appeals from that ruling.

## Discussion

Under 28 U.S.C. § 158(a), we may hear appeals from final judgments, orders, and decrees of bankruptcy judges in this district. We review the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *Matter of UNR Indus., Inc.*, 986 F.2d 207, 208 (7th Cir.1993). The parties agree that the only issue before us is one of law.

Section 523 sets forth a number of instances in which a debt may not be discharged. Section 523(a)(2)(B) prohibits discharge where the debt is for:

> (2) money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> . . . .
>
> (B) use of a statement in writing—
>
> (i) that is materially false;
>
> (ii) respecting the debtor's or an insiders financial condition;

---

1. On December 2, 1994, we informed the parties that we were affirming the bankruptcy court and that this memorandum opinion and order would follow. We also informed them that the time for appeal would not begin to run until this opinion was issued.

2. There is no evidence that McFarland knew that the Credit Union employed a debt-to-income ratio of forty-five percent, or that she knew she would fall below that limit if she omitted the Overland Bond Company and Internal Revenue Service debts. However, it is undisputed that McFarland knew of and failed to disclose those debts when she applied for the 1993 loan.

(iii) on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive ...

11 U.S.C. § 523(a)(2)(B) (1993). Here, it is undisputed that McFarland's 1993 loan application meets all the requirements of this subsection. The bankruptcy judge held that only the $3,500 of "new money" loaned in 1993 was non-dischargeable because those were the only funds the Credit Union had loaned to McFarland in reliance on the false financial statement. The Credit Union argues, as it did before the bankruptcy court, that the entire amount of $8,712.28 should be non-dischargeable under section 523(a)(2)(B) because it issued McFarland a new loan in 1993 and canceled her 1991 loan. McFarland, of course, disagrees.[3]

As the parties correctly note, this issue has never been addressed by the Seventh Circuit, although three circuits have dealt with similar cases. In *In re Goodrich*, 999 F.2d 22 (1st Cir.1993), the First Circuit held that where the creditor showed that it would not have renewed an existing loan that had come due or advanced additional money but for the debtor's false financial statement, the entire amount of the debt was non-dischargeable. *Id.* at 27. Similarly, in *In re Gerlach*, 897 F.2d 1048 (10th Cir.1990), the Tenth Circuit held that where a John Deere dealership repeatedly submitted sham customer financing applications to obtain provisional credit from the manufacturer, the debt was non-dischargeable. The court noted,

> If a creditor can prove by clear and convincing evidence that the debtor obtained credit through fraud, the court should declare the debt non-dischargeable in an amount which it can reasonably estimate as obtained by the fraud. And a debt is "obtained by" fraud if the fraud is a substantial factor in the creditor's decision.

*Id.* at 1052. And, in *In re Siriani*, 967 F.2d 302 (9th Cir.1992), the Ninth Circuit held that the creditor had to show that the debt-or's fraud proximately caused its injuries and that, as a result of the fraud, it gave up valuable collection remedies on the original debt that subsequently became worthless, in order to recover the entire amount of the debt. *Id.* at 306.

The Credit Union characterizes these three decisions as evidencing a split in the circuits, for it says the First and Tenth Circuit have held that the entire debt is non-dischargeable where "new money" was obtained by fraud, and that the Ninth Circuit has limited non-dischargeability to the "new money." We disagree, as does McFarland, with both this characterization and its applicability to this case. Both *Gerlach* and *Goodrich* are distinguishable, for they clearly involve the renewal of loans that had come due or the extension of additional credit.

For our purposes, the operative language in section 523(a)(2)(B) is that the debt is non-dischargeable "to the extent obtained" by a false financial statement. Here, the undisputed evidence presented at trial showed that McFarland obtained only the additional $3,500 loaned in May 1993 by means of the fraudulent loan application. We agree with the bankruptcy judge that the Credit Union's practice of closing existing loans and extending new loans constituted a "paper transaction," and that the Credit Union did not take a new credit risk on the unpaid balance of the 1991 loan on the basis of the fraudulent 1993 loan application. (Tr. at 50.) Only the $3,500 was obtained by means of the false financial statement, and hence, only that debt is non-dischargeable. To conclude otherwise would render the "to the extent obtained" language of section 523(a)(2)(B) meaningless.

### Conclusion

For the foregoing reasons, we affirm the bankruptcy judge's decision that only the $3,500 loaned by South Division Credit Union to Dorothy McFarland on the basis of the fraudulent May 1993 loan application is non-dischargeable.

---

**3.** McFarland does not appeal from the bankruptcy court's ruling that the $3,500 loaned in 1993

is non-dischargeable.