KANNE, Circuit Judge.
 

 South Division Credit Union filed an adversary complaint in a chapter 7 bankruptcy proceeding alleging the nondischargeability of the balance on a promissory note executed by the debtor, Dorothy McFarland. The bankruptcy court determined that only a fraction of the total balance was nondis-chargeable under the relevant statute, and the district court affirmed.
 
 South Division Credit Union v. McFarland,
 
 179 B.R. 87 (N.D.Ill.1995). The district court found that the statutory language requires only that the amount of additional credit extended to the debtor in such a transaction is nondischargeable. This appeal followed, and it presents us with the question whether the discharge exception prescribed by 11 U.S.C. § 523(a)(2)(B) encompasses the entire amount of a loan whose proceeds are used in part to extinguish the debtor’s obligation on a previous loan from the same creditor.
 

 I
 

 The material facts are undisputed. McFarland had been a longtime Credit Union customer when she executed a promissory note on May 29, 1991, in the amount of $7,669.97 with a maturity date of February 28, 1995. She consistently made timely payments on this note. On May 11, 1993, McFarland applied for a loan from the Credit Union in the amount of $9,257.17 and subsequently executed a promissory note for this amount. The loan secured by the May 1993 note comprised a disbursement of $3,500 to McFarland and the satisfaction of her obligation on the May 1991 note, which then had a balance of $5,757.17.
 

 ' The record suggests that this was the typical method by which the Credit Union extended additional credit while simultaneously refinancing existing debt. McFarland executed five separate promissory notes between December 10, 1990, and May 11, 1993. We itemize the notes below using the terms that appear on the face of the notes:
 

 
 *945
 
 Origination date Loan amount Disbursed to McFarland Credited to account
 
 [1]
 
 Maturity date
 

 [[Image here]]
 

 The terms of these promissory notes demonstrate that the proceeds of each note were used to pay off whatever balance McFarland owed the Credit Union on the most recent note. The remaining sum represented the amount of additional credit that the Credit Union extended to her on the same terms as those covering the refinancing of her outstanding balance. The Credit Union disbursed the additional credit to McFarland in the form of cash payments. Each promissory note referenced the same member, account, and contract numbers and the same secured collateral of $300.00 that was contained in McFarland’s account with the Credit Union.
 

 McFarland applied for the May 1993 loan by providing the Credit Union with a financial statement that purported to list her assets and liabilities. She failed to include in that statement her liability as cosigner on a $7,000 promissory note to the Overland Bond Company (the “Overland note”) and the fact that she owed the Internal Revenue Service $1,500. The Credit Union made the May 1993 loan because the incomplete information McFarland provided showed a debt-to-income ratio of 42 percent, below the Credit Union’s limit of 45 percent. Had McFarland disclosed her liability on the Overland note or her debt to the IRS, the Credit Union would have calculated her debt-to-income ratio as exceeding 45 percent and denied her application. Had that occurred, the May 1991 note would have remained in force with a maturity date of February 28,1995.
 

 McFarland filed for liquidation under chapter 7 of the Bankruptcy Act of 1988, 11 U.S.C. § 701
 
 et seq.,
 
 on September 8,1993, in the Northern District of Illinois. At that time, the May 1993 note had an outstanding balance of $8,712.28. The Credit Union filed an adversarial complaint in the bankruptcy proceeding seeking a determination that the entire balance of $8,712.28 was nondischargeable pursuant to the fraud exception contained . at 11 U.S.C. § 523(a)(2)(B). The bankruptcy court conducted a hearing on June 15, 1994, at which it heard testimony from McFarland and Eileen Ivanauskas, collection administrator at the Credit Union. Immediately following the parties’ closing arguments, the bankruptcy court ordered that $3,500 of the balance was nondischargeable pursuant to § 523(a)(2)(B).
 

 The Credit Union appealed to the district court pursuant to 28 U.S.C. § 158(a), and the district court affirmed the bankruptcy court in a memorandum opinion and order dated March 9, 1995. 179 B.R. 87. The district court focused upon the statutory requirement that a debt be nondischargeable “to the extent obtained” by a materially false statement. It found that McFarland had obtained only the $3,500 additional credit by virtue of her false financial statement and that the Credit Union did not assume any risk on McFarland’s existing balance of $5,757.17 when it used that portion of the loan proceeds to retire the May 1991 note.
 

 II
 

 In liquidation eases under Chapter 7, the court is required to grant qualified debtors discharges from debts except as provided by 11 U.S.C. § 523.
 
 See
 
 11 U.S.C. § 727(b). In a nutshell, discharge operates to void a judgment predicated upon the debtor’s personal liability to the extent the judgment encompasses any portion of the discharged debt and also enjoins the commencement of any action seeking such a judgment. See 11 U.S.C. § 524. Discharge essentially places a
 
 *946
 
 debtor in a safe harbor with respect to discharged debt(s).
 

 The Bankruptcy Code exclusively governs the determination of whether a debt is nondischargeable,
 
 Brown v. Felsen,
 
 442 U.S. 127, 129-30, 99 S.Ct. 2205, 2208-09, 60 L.Ed.2d 767 (1979), and the exceptions to discharge are set out at 11 U.S.C. § 523. The statutory provision at issue concerns the discharge exception for debts incurred through materially false written statements:
 

 A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
 

 [[Image here]]
 

 (2) for money, .property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—
 

 [[Image here]]
 

 (B) use of a statement in writing—
 

 (i) that is materially false;
 

 (ii) respecting the debtor’s or an insider’s financial condition;
 

 (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
 

 (iv) that the debtor caused to be made or published with intent to deceive ....
 

 11 U.S.C. § 523(a)(2)(B).
 

 The Bankruptcy Code also describes procedures for resolving controversies concerning (non)dischargeability. Either the creditor or the debtor may file a complaint under § 523(c), which requires the district court
 
 [2]
 
 to provide notice and a hearing to determine whether a debt qualifies for the exception described by § 523(a)(2)(B). 11 U.S.C. § 523(c); Banxr. R. 4007. Debts that might otherwise qualify under § 523(a)(2)(B) are presumed dischargeable unless a creditor files a complaint and proves otherwise. 3 Collier on BANKRUPTCY ¶ 523.05B, at 523-18 (15th ed. Feb.1996). The creditor bears the burden of proving by a preponderance of the evidence that the debt meets the statutory exception requirements.
 
 Grogan v. Garner,
 
 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991);
 
 In re Thirtyacre,
 
 36 F.3d 697, 700 (7th Cir. 1994).
 

 Because this appeal concerns the district court’s legal interpretation of § 523(a)(2)(B), our review is
 
 de novo. In re Sheridan,
 
 57 F.3d 627, 633 (7th Cir.1995). Certain courts have construed the statutory exceptions to discharge “in favor of the debt- or” and have required that reasons supporting nondischargeability “be real and substantial, not merely technical and conjectural.”
 
 In re Tully,
 
 818 F.2d 106, 110 (1st Cir.1987) (citation omitted).
 
 See also In re Miller,
 
 39 F.3d 301, 304 (11th Cir.1994) (collecting authority). However, this interpretive gloss, whatever its pedigree in the statute’s legislative history, is insufficient to support a construction of § 523(a)(2)(B) that does not give due regard to the statute’s plain meaning, which is the starting point for our inquiry.
 
 See In re Witkowski,
 
 16 F.3d 739, 745 (7th Cir.1994).
 

 Ill
 

 There are two causation requirements for nondischargeability of “an extension, renewal, or refinancing of credit” under § 523(a)(2)(B). The first is set forth in the “to the extent obtained by” language. The second causation element is incorporated in the requirement that the creditor rely on the materially false statement.
 
 See In re Goodrich,
 
 999 F.2d 22, 24 (1st Cir.1993).
 

 In our analysis and review, we cannot focus only on the former requirement and ignore the plain meaning of the language immediately preceding it. Such an approach would offend the venerable canon that one must read a statute as a whole and give
 
 *947
 
 meaning to each of its constituent parts.
 
 See United States v. Nordic Village, Inc.,
 
 503 U.S. 30, 35-36, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992);
 
 Trustees of the Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Leaseway Transp. Corp.,
 
 76 F.3d 824, 828 (7th Cir.1996).
 

 Read as a contextual whole and as applicable to the facts of this case, § 523(a)(2)(B) provides that dischargeability is not available for “... an extension, renewal, or refinancing of credit, to the extent obtained by ... use of a written statement ... that is materially false.”
 

 The May 1993 note was, in part, a refinancing of the May 1991 note: the proceeds of the McFarland’s May 1993 note were used to pay off her existing debt on the May 1991 note.
 
 See
 
 WebsteR’s THIRD New International Dictionary 1908 (1986) (defining refinance); Blaoic’s Law Dictionary 1281 (6th ed. 1990) (same). The May 1993 note extended the maturity date on the balance of the May 1991 note and concomitantly increased McFarland’s financial obligation on that balance by imposing the additional interest that would accrue over the term of the note. Absent compelling evidence to the contrary, we assume that words in a statute carry the weight of their ordinary, contemporary, and common meaning.
 
 Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. Partnership,
 
 507 U.S. 380, 388, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993). The ordinary and common meaning of “refinance” in the context of § 523(a)(2)(B) requires that the portion of the May 1993 note constituting the balance previously due on the May 1991 note be nondischargeable.
 

 It is clear that the Credit Union relied upon McFarland’s application not only in extending her $3,500 in additional credit but also in refinancing her existing debt. The Credit Union’s collections administrator testified that the Credit Union would not have written the May 1993 loan had it known of McFarland’s liability on the Overland note and indebtedness to the IRS.
 

 One final point should be noted. The language of the district court’s order suggests that its analysis was premised upon a conclusion that the Credit Union'was no worse off than it would have been had it not refinanced McFarland’s debt on the May 1991 note prior to her filing under Chapter 7. This implies the existence of a detriment requirement in the statute, but the text of § 523(a)(2)(B) contains no damage or detriment requirement, and the courts are not empowered to add one.
 
 See In re Norris,
 
 70 F.3d 27, 29 n. 6 (5th Cir.1995) (noting that such a requirement would be surplusage in light of the two causation requirements in § 523(a)(2)(B)). For those who would resort to legislative history to reach this conclusion, the First and Tenth Circuits have concluded that the history attending the enactment of § 523(a)(2)(B) confirms our (and their) plain reading of the statute. See
 
 Goodrich,
 
 999 F.2d at 25-27;
 
 In re Gerlach,
 
 897 F.2d 1048, 1051 & n. 2 (10th Cir.1990). We do not reproduce their discussions here, for there is no need to examine legislative history where the words of a statute are clear.
 
 Barnhill v. Johnson,
 
 503 U.S. 393, 401-02, 112 S.Ct. 1386, 1391, 118 L.Ed.2d 39 (1992);
 
 United States v. Hudspeth,
 
 42 F.3d 1015, 1022 (7th Cir.1994) (en banc),
 
 cert. denied,
 
 — U.S. ——, 115 S.Ct. 2252, 132 L.Ed.2d 260 (1995).
 

 IV
 

 The Credit Union reasonably relied upon McFarland’s materially false written statement in refinancing her balance of $5,757.17 on the May 1991 note and in extending her additional credit in the amount of $3,500. In accordance with § 523(a)(2)(B) the May 1993 note is nondischargeable in full.
 

 The judgment of the district court is Reversed and this ease is Remanded to the district court so that it may enter judgment consistent with this opinion.
 

 [1]
 

 . The sum classified as "credited to account" on each promissory note were devoted to discharging McFarland’s obligations on the preceding promissory note.
 

 [2]
 

 . Following the Supreme Court’s plurality opinion in
 
 Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the district courts retain "original and exclusive jurisdiction of all cases under title 11 [of the United States Code],” subject to the provisions of 28 U.S.C. § 1334(b). 28 U.S.C. § 1334(a). The district court is empowered to refer proceedings under Title 11 to a bankruptcy judge from the district pursuant to 28 U.S.C. § 157(a). The bankruptcy court is therefore an adjunct of the district court.