**In re Joel BRODSKY, Debtor.**

**Michael L. Shevick, Plaintiff,**

v.

**Joel Brodsky, Defendant.**

**Bankruptcy No. 98 B 34613.
Adversary No. 99 A 00069.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Oct. 5, 1999.

Mitchell R. Nagorsky, Weisman & Weisman, P.C., Chicago, IL, for Movant.

Thomas A. Else, Oak Brook, IL, for Debtor/Defendant.

Michael L. Shevick, Wessel & Shevick, Chicago, IL, Allan J. DeMars, Spiegel & DeMars, Chicago, IL, Other Attorneys.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the complaint of Michael L. Shevick ("Shevick") against Joel Brodsky (the "Debtor") to determine whether a debt owed by the Debtor to Shevick is non-dischargeable under 11 U.S.C. § 523(a)(5). For the reasons set forth herein, the Court finds the debt non-dischargeable.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a), formerly known as General Rule 2.33(A), of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## II. FACTS AND BACKGROUND

The Debtor and Darlene Brodsky ("Mrs. Brodsky") were involved in a contested marital dissolution proceeding in the Circuit Court of Cook County, Illinois. On August 26, 1996, Shevick was appointed as attorney for the two minor children of the Debtor and Mrs. Brodsky. *See* Shevick's Exhibit No. 1. On April 23, 1997, a Judgment for Dissolution of Marriage (the "Judgment") was entered. *See* Shevick's

Exhibit No. 5. The Judgment provided that Shevick was awarded attorney's fees in the sum of $5,200.00.[1] *Id.* at p. 3, ¶ 7. The Marital Settlement Agreement (the "Agreement"), which was entered into by the Debtor and Mrs. Brodsky on April 15, 1997, and incorporated into the Judgment, provided that the Debtor would pay Shevick his fees as attorney for the children. *Id.* at p. 7, ¶ 8.14.

On October 29, 1998, the Debtor filed a Chapter 7 petition. On Schedule F, he listed Shevick as an unsecured creditor. On January 15, 1999, Shevick filed this adversary proceeding against the Debtor seeking to establish that the debt owed him is non-dischargeable under 11 U.S.C. § 523(a)(5). Shevick argues that the legal fees earned and awarded were incurred as a result of contested domestic relations litigation which included child custody, visitation and support issues. The Debtor contends that the debt is in the nature of dischargeable property division between himself and Mrs. Brodsky rather than non-dischargeable support. On September 23, 1999, the Court conducted an evidentiary hearing and heard the testimony of Shevick, the Debtor and Mrs. Brodsky.

Shevick testified that he is an attorney licensed to practice law in Illinois since 1978. He stated that for the past ten years he has been involved in hundreds of domestic relations cases. Shevick further testified that he was appointed by the state court in the dissolution proceeding to represent the two minor daughters of the Debtor and Mrs. Brodsky. Shevick stated that he has been appointed as attorney or guardian-ad-litem for other children in approximately thirty cases. He noted that his general duties as an attorney for minor children or as a guardian-ad-litem include looking out for the appropriate custody, visitation, health, education and welfare of the children, which he did in this situation.

Shevick testified that he met with the two minor children as well as both parents

---

1. The parties have stipulated that the unpaid balance due and owing Shevick is $4,600.00.

on several separate occasions. Specifically, he met with the two children in September 1996 with the Debtor and in November 1996 at Mrs. Brodsky's apartment. Shevick also met and consulted with the paternal grandparents, therapists, doctors and social workers regarding the children, and in particular one daughter who was hospitalized for reasons related to the dissolution disputes between her parents. He stated that after the child was released from the hospital, he authored a letter regarding recommended supervisors for the court-ordered supervised visitation of the children. *See* Shevick's Exhibit No. 3. Shevick testified that he had numerous conversations with and received much correspondence from the Debtor regarding the children and the issues of custody, visitation and child support. *See* Shevick's Group Exhibit No. 7. Many of these conversations and correspondence were in regard to Mrs. Brodsky's substance abuse and its effects upon the children.

Additionally, Shevick testified that on approximately 15-20 occasions he appeared in court on behalf of the children and had input with respect to orders entered regarding child support payments, visitation and custody. Although he prepared no other motions or pleadings, Shevick petitioned the state court to establish a trust pursuant to 750 ILCS 5/503(g) to pay for the future expenses of the children, particularly long-term therapy. *See* Shevick's Exhibit No. 4. Shevick stated that he attended a mediation session on April 8, 1997 with the Debtor and Mrs. Brodsky, which involved settlement discussions leading to the Agreement and the Joint Parenting Agreement. Shevick further testified that he was involved with the issues of visitation and custody and had input into the negotiations and terms embodied in the Judgment and Agreement. Shevick testified that he did not file a separate fee petition with the state court, nor did he make an accounting of the time he expended on behalf of the children.

Next, Mrs. Brodsky testified. She recalled that Shevick was appointed as attorney for the children, but did not recall any meetings or phone conversations with him. She denied that Shevick visited her apartment in November 1996 and met with the children and spoke with her. Mrs. Brodsky also testified that Shevick did nothing to facilitate child support and that she never discussed the issues of custody or visitation with him. Mrs. Brodsky denied that Shevick attended the mediation session.

The Debtor testified that Shevick met with the children at his home only one time. The Debtor stated that he met with Shevick once in his office and never had any other meetings with him, other than seeing him in passing. The Debtor testified that he sent Shevick many faxes to make him aware of Mrs. Brodsky's substance abuse and the problems that it was causing with the children. *See* Shevick's Group Exhibit No. 7. According to the Debtor, Shevick never took any action in this regard. The Debtor further stated that Shevick did not prepare the motion for the appointment of a trust for the children. Rather, the Debtor testified that he prepared the motion. The Debtor further testified that Shevick did nothing to facilitate visitation or custody of the children. Overall, the Debtor testified that Shevick did little to earn the fees he was awarded. The Debtor agreed to pay the fees in order to conclude the dissolution and have the Agreement approved.

The Debtor testified that Shevick virtually blackmailed him into agreeing to his fees. The Debtor stated that Shevick refused to recommend to the state court that the Judgment and Agreement be approved unless and until the Debtor agreed to pay the total amount of his fees. The Debtor admitted, however, that although he deemed this tantamount to blackmail, he did not report Shevick to the Illinois Attorney Registration and Disciplinary Commission or the state trial court because he wanted to conclude the dissolution pro-

ceeding. Further, the Debtor admitted that when Shevick was reappointed to represent the children in May 1998, he did not object to that appointment, file a motion to vacate the appointment, or take other action to modify the Judgment regarding Shevick's fees.

In rebuttal, Shevick flatly denied the allegation that he blackmailed the Debtor. Shevick stated that the $5,200.00 sum provided in the Judgment was a compromise reached with the Debtor and that the fees would have been higher had he separately petitioned the state court for an award for his services.

## III. DISCUSSION

### A. The Standards for Dischargeability in the Seventh Circuit

■ The party seeking to establish an exception to the discharge of a debt bears the burden of proof. *Selfreliance Fed. Credit Union v. Harasymiw (In re Harasymiw)*, 895 F.2d 1170, 1172 (7th Cir.1990); *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 961 (Bankr.N.D.Ill.1995). The United States Supreme Court has held that the burden of proof required to establish an exception to discharge is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re McFarland*, 84 F.3d 943, 946 (7th Cir.), *cert. denied*, 519 U.S. 931, 117 S.Ct. 302, 136 L.Ed.2d 220 (1996); *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir.1994). To further the policy of providing a debtor a fresh start in bankruptcy, "exceptions to discharge are to be construed strictly against a creditor and liberally in favor of a debtor." *Goldberg Secs., Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir.1992) (quoting *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir. 1985)). *Accord In re Reines*, 142 F.3d 970, 972–73 (7th Cir.1998), *cert. denied*, — U.S. ——, 119 S.Ct. 797, 142 L.Ed.2d 659 (1999). "That policy of protecting and favoring the debtor is tempered, however, when the debt arises from a divorce or separation agreement." *In re Crosswhite*,

148 F.3d 879, 881 (7th Cir.1998) (citation omitted). The § 523(a)(5) exception from discharge is construed more liberally than other § 523 exceptions. *Id.* at 882.

### B. 11 U.S.C. § 523(a)(5)

Section 523 of the Bankruptcy Code enumerates specific exceptions to the dischargeability of debts. Shevick contends that the fees awarded by the state court are non-dischargeable under § 523(a)(5). Section 523(a)(5) provides in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse or child of the debtor for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement....

11 U.S.C. § 523(a)(5). The question of whether fees incurred by an attorney representing minor children in a dissolution proceeding are non-dischargeable as support under § 523(a)(5) has not been determined by the Seventh Circuit. This is an issue of first impression for this Court.

■ A debt owed to a former spouse or a debt to be paid to a third party in the nature of alimony, maintenance, or support pursuant to a divorce decree is non-dischargeable in bankruptcy under § 523(a)(5). *See In re Coil*, 680 F.2d 1170, 1171 (7th Cir.1982); *Maitlen v. Maitlen (In re Maitlen)*, 658 F.2d 466, 468 (7th Cir.1981); *Bradaric v. Bradaric (In re Bradaric)*, 142 B.R. 267, 269 (Bankr. N.D.Ill.1992). Obligations that arise as part of the division of marital property, however, are dischargeable under that section. *Coil*, 680 F.2d at 1171. "An award of maintenance and support is meant to provide an ex-spouse with necessary goods or services which he or she would other-

wise not be able to purchase." *Calisoff v. Calisoff (In re Calisoff)*, 92 B.R. 346, 352 (Bankr.N.D.Ill.1988) (citation omitted). This logic equally applies to awards to or for the benefit of children of spouses whose marriages are dissolved. That children can receive property settlement awards as well as support for bankruptcy dischargeability purposes is indicated by the express reference to "child of the debtor" in 11 U.S.C. § 523(a)(15)(B), by which Congress made certain debts in the nature of property settlement non-dischargeable.

■ Section 523(a)(5) sets out three requirements that must be met in order for a debt to be non-dischargeable: (1) the underlying debt must be in the nature of alimony, maintenance, or support; (2) the debt must be owed to a former spouse or child; and (3) the debt must be incurred in connection with a separation agreement, divorce, or property settlement agreement or other order of a court of record. *Reines*, 142 F.3d at 972 (citing *Kinnally v. Fonnemann (In re Fonnemann)*, 128 B.R. 214, 217 (Bankr.N.D.Ill.1991)); *Wawak v. Smolenski (In re Smolenski)*, 210 B.R. 780, 782 (Bankr.N.D.Ill.1997).

■ Only the first of these three elements is at the heart of this dispute. With respect to the second element-that the debt must be owed to a former spouse or child-the Seventh Circuit has held "awards of attorneys' fees for services in obtaining support orders have been held non-dischargeable even though the attorney is neither a spouse, a former spouse, nor a child of the debtor." *In re Rios*, 901 F.2d 71, 72 (7th Cir.1990) (citations omitted). The Court finds that the second element has been satisfied because the state court order awarding the attorney's fees was entered in favor of Shevick who was the court appointed attorney for the children. It is uncontested that the award upon which Shevick relies to collect his fees was entered pursuant to the Judgment, which is an order of the state court in connection with the dissolution proceeding, so the third element is not disputed.

■ The determination of whether a debt is in the nature of alimony, maintenance, or support is a matter of federal bankruptcy law rather than state law. *Haas v. Haas (In re Haas )*, 129 B.R. 531, 536 (Bankr.N.D.Ill.1989); *Seidel v. Seidel (In re Seidel)*, 48 B.R. 371, 373 (Bankr. C.D.Ill.1984). In making this determination, the Court must look to the substance of the obligation and not to labels imposed by state law. *See Maitlen*, 658 F.2d at 468; *Doss, Puchalski, Keenan & Bargiel, Ltd. v. Cockhill (In re Cockhill)*, 72 B.R. 339, 341 (Bankr.N.D.Ill.1987). This is not to say, however, that state law is irrelevant. On the contrary, state law may in fact provide relevant guidance. *See Calisoff*, 92 B.R. at 352. Thus, "it is the basis for creation of the obligation which determines whether it was intended as an equalization of property rights or as support and maintenance." *In re Woods*, 561 F.2d 27, 29 (7th Cir.1977) (citations omitted).

■ In determining whether a debt is in the nature of support or maintenance or whether it is properly characterized as a division of property, courts have considered the following factors:

(1) whether the obligation terminates upon the death or remarriage of either spouse (termination of the obligation indicates the obligation was for support);

(2) whether the obligation is payable in a lump sum or in installments over a period of time (obligation spread over time indicates the obligation was for support);

(3) whether the payments attempt to balance the parties' income (payments to balance income indicate the payments were for support);

(4) the characterization of the obligation in the decree (obligations described as support indicate the obligation was for support);

(5) the placement of the obligation in the decree (obligations under the

heading support indicate the obligation was for support);

(6) whether there is any mention of support payments (separate mention of support payments indicates the obligation is not for support);

(7) whether there are children who need support (if children are of the age when support is required, this indicates the payments may be for support);

(8) whether there is a large differential in net income (a large differential in income would indicate the payments were for support);

(9) whether the obligation was thought to be taxable to the recipient (payments thought to be taxable indicate the payments were for support); and

(10) waivers of maintenance.

See Woods, 561 F.2d at 29–30; Maitlen, 658 F.2d at 468–69; Coil, 680 F.2d at 1172; Sterna v. Paneras (In re Paneras), 195 B.R. 395, 401–02 (Bankr.N.D.Ill.1996); Wright v. Wright (In re Wright), 184 B.R. 318, 321 (Bankr.N.D.Ill.1995); Daulton v. Daulton (In re Daulton), 139 B.R. 708, 710 (Bankr.C.D.Ill.1992). The critical and principal inquiry is whether the intent of the divorce court and the parties was to provide support or divide marital property and debts. Wright, 184 B.R. at 321; Elkhatib v. Elkhatib (In re Elkhatib), 108 B.R. 650, 652 (Bankr.N.D.Ill.1989). The heart of the Debtor's defense is that by applying most of the Woods factors to the Agreement and Judgment, the Court should find the fee award to be in the nature of property settlement, not non-dischargeable support.

■ The Court must look to the substance of the underlying obligation to determine whether it is in the nature of support or maintenance and thus non-dischargeable, or whether it constitutes a division of property. Reviewing the Judgment and the Agreement using the Woods factors, the Court is unable to clearly ascertain the intent of the parties or the state court as to the fees owed Shevick. The Judgment does not indicate what type of obligation it represents; it simply awards Shevick $5,200.00 in attorney's fees without specifying whether same is support or property settlement. The Judgment is silent as to when the obligation terminates. As a matter of law, it probably does not terminate until its is satisfied by payment in full or discharged in this proceeding. The Judgment makes the obligation payable to Shevick in two installments. The Court is unable to determine from reviewing the Judgment whether the award to Shevick was entered in order to balance the incomes of the Debtor and Mrs. Brodsky. From the limited record at trial, the Court is unable to ascertain whether there was any differential in net income between the Debtor and Mrs. Brodsky. The Judgment is silent as to the character of the award and there are no headings in the Judgment indicating whether the state court intended the award to be either support or property division. In the Agreement, the Debtor's obligation to pay the fees falls under the heading of "Debts and Obligations." There is separate mention in the Judgment of support and other payments for the two minor children. The Judgment does not mention whether the obligation was thought to be taxable, although certainly these fees would be taxable income to Shevick. Finally, both the Debtor and Mrs. Brodsky waived any right to maintenance from each other.

Based upon application of the Woods factors, the Court is unable to ascertain from the text of the Judgment or the Agreement whether the debt to Shevick is in the nature of support or properly characterized as a division of property. In part, this is because the Woods factors are most helpful in determining whether an award is either property settlement or alimony, maintenance or support between the parties themselves who are in the process of dividing their marital property and allocating who pays what debts. This is in

contrast to the situation of minor children. Children usually have no property in which they have an interest with their parents to be equitable allocated, but who more often than not have their own critical and vital interests to be protected regarding their custody, visitation by their non-custodial parent, and support from both parents in its various forms. Because minor children in Illinois generally cannot enter into binding contracts or own or deal in property themselves, without benefit of a natural or court appointed guardian, at first blush it seems unlikely that provisions in an Illinois judgment for dissolution and a related settlement agreement entered into between the parents of such children regarding the attorney's fees for a court appointed attorney for the children would somehow be characterized as property settlement. Children's property is not divided by the parents in their marital settlement agreement or any related judgment of dissolution. Thus, rote application of the *Woods* factors does not necessarily decide the question at bar under § 523(a)(5) involving attorney's fees for a court appointed attorney for minor children of the parties to a dissolution or divorce proceeding.

The award of fees to an attorney for minor children or to a guardian-ad-litem appointed in state court divorce or dissolution proceedings has spawned a great deal of litigation under § 523(a)(5). The majority of courts confronted with this issue have held that these fees ordered by the state court to be paid by the debtor directly to the attorney or guardian-ad-litem for minor children of the debtor are a non-dischargeable support obligation. *See, e.g., In re Chang*, 163 F.3d 1138 (9th Cir. 1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 2029, 143 L.Ed.2d 1039 (1999); *In re Miller*, 55 F.3d 1487 (10th Cir.), *cert. denied*, 516 U.S. 916, 116 S.Ct. 305, 133 L.Ed.2d 210 (1995); *In re Dvorak*, 986 F.2d 940 (5th Cir.1993); *In re Peters*, 964 F.2d 166 (2d Cir.1992); *Sinton v. Blaemire (In re Blaemire)*, 229 B.R. 665 (Bankr. D.Md.1999); *Douglas v. Dalgo (In re*

*Douglas)*, 202 B.R. 961 (Bankr.S.D.Ill. 1996); *Madden v. Staggs (In re Staggs)*, 203 B.R. 712 (Bankr.W.D.Mo.1996); *Walker v. Laing (In re Laing)*, 187 B.R. 531 (Bankr.W.D.Va.1995); *Spear v. Constantine (In re Constantine)*, 183 B.R. 335 (Bankr.D.Mass.1995); *Baillargeon v. Stacey (In re Stacey)*, 164 B.R. 210 (Bankr. D.N.H.1994); *Heintz v. Tremblay (In re Tremblay)*, 162 B.R. 60 (Bankr.D.Me. 1993); *Jenkins v. Glynn (In re Glynn)*, 138 B.R. 360 (Bankr.D.Conn.1992); *Hack v. Laney (In re Laney)*, 53 B.R. 231 (Bankr.N.D.Tex.1985); *Schultz v. Yarns (In re Yarns)*, 23 B.R. 370 (Bankr.N.D.Ill. 1982). It is this line of cases that Shevick urges the Court to follow.

A minority of courts have ruled that a debt owed by a debtor to an attorney for the child or a child's guardian-ad -litem, for fees incurred while representing the minor child in a custody dispute, is a dischargeable debt because those fees could not be considered support or in the nature of support as the issues raised in the custody dispute did not involve support or maintenance for the child, and the fees were not incurred in connection with the collection of child support. *See, e.g., Daulton v. Daulton (In re Daulton)*, 139 B.R. 708 (Bankr.C.D.Ill.1992); *Weed v. Lanza (In re Lanza )*, 100 B.R. 100 (Bankr. M.D.Fla.1989). The Debtor urges the Court to follow the *Daulton* approach.

In the instant case, Shevick was not appointed as guardian-ad-litem for the minor children. Rather, he was appointed as their attorney. While the roles and specific duties of guardian-ad-litem and attorney for a minor child may be somewhat different, the Court sees no functional difference between the two for purposes of determining whether the services rendered here were in the nature of support for the minor children. In an action in which custody, visitation rights or the amount of support of a minor child is contested, the discretionary appointment of counsel for minors is clearly authorized under Illinois

law. *See* 750 ILCS 5/506. That statute expressly allows the state court to tax such fees against either or both parents or against the child's separate estate. *Id.*

■ The Court is more persuaded by the rationale of the majority view which holds that fees awarded to an appointed guardian-ad-litem or attorney for the child are non-dischargeable where that person represents the children in matters involving custody, visitation, support, health, education and welfare as in the nature of support. Public policy demands a far broader reading of what is meant by "support" for a minor child in § 523(a)(5) than that being offered by the minority view. *Blaemire,* 229 B.R. at 669. Children are not property of their parents and usually have no property of their own to be divided in a marital dissolution proceeding. The services provided to them by an attorney or guardian-ad-litem are typically rendered for the protection of their health and welfare, as was done here. This is more in the nature of support than property settlement from a practical and common sense approach. There is no evidence here that the work Shevick performed involved protecting any property interests of the children. Rather, he was brought in at a time when the dissolution action was contested on the issues of child custody and visitation rights. Section 523(a)(5) should not be construed so narrowly as to exclude everything that bears on the welfare of the child except the payment of child support bills.

The testimony was uncontroverted that Shevick's services on behalf of the children, although disputed by the Debtor and Mrs. Brodsky as to the extent and value, were rendered at a time when the custody of the children and visitation rights were contested. His services were rendered for the purpose of protecting the minor children's health, education, welfare and their best interests under the trying circumstances of the contested dissolution proceeding. The services provided by Shevick for the benefit of the two minor children were clearly for their general welfare and support as opposed to protecting any property rights or interests they may have had. The Court found Shevick's testimony more credible than the Debtor's testimony. The focus of the services provided by Shevick were what would be in the best interests of the children, in light of the disputes and problems between their parents.

The Court finds the testimony of Mrs. Brodsky and the Debtor less credible than Shevick's testimony. This Court is in the best position to assess the credibility of the witnesses and weigh the evidence. *See Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (deference given to trial court's findings that involve credibility of witnesses because only the trial judge can be aware of the variations in demeanor and tone of voice that bears so heavily on the listener's understanding of and belief in what is stated). The Court has carefully observed the demeanor and weighed the testimony of the three witnesses. While the Court does not ignore uncontradicted testimony unless it is inherently unbelievable, where testimony is contradicted by other testimony or circumstances, the Court must decide the credibility and weight afforded such testimony. Mrs. Brodsky's recollection may be far less than crystal clear regarding whether Shevick met with her and the two children in November 1996 at her apartment or whether he attended the subsequent mediation session given that at those times she had an ongoing substance abuse problem. In addition, the Debtor's credibility is questionable in light of the fact that he admittedly agreed to pay the fees, yet neither sought any relief from the state court by appropriate motion nor reported or notified any authority of Shevick's alleged illegal and unprofessional conduct.

Accordingly, the Court finds that in the contested dissolution proceeding involving the custody and visitation of the children, the court ordered fees, which the Debtor agreed to pay, for services of the attorney

for the children constitute a debt in the nature of support of the minor children. Thus, the Court concludes that fees awarded to Shevick are non-dischargeable as in the nature of support under § 523(a)(5). Although both the Debtor and Mrs. Brodsky testified that Shevick did not perform services worth the $5,200.00 agreed to be paid and awarded, that argument is unavailing as the Judgment is now final and entitled to full faith and credit pursuant to 28 U.S.C. § 1738. Thus, the Debtor cannot indirectly attempt to collaterally attack the amount of the award made by the state court.

**C. Referral Under 18 U.S.C. § 3057 and the Rules of Professional Conduct**

 Finally, the Court must address the Debtor's testimony that Shevick blackmailed him into agreeing to pay the fees. Shevick absolutely denied this wrongful conduct in his rebuttal testimony. Same involves alleged improper conduct by a practicing member of the bar while acting as such and is a most serious charge which cannot be decided here. This frankly shocking testimony raises the serious specters of criminal conduct and purported violations of the relevant ethics codes to which Illinois attorneys must adhere. This Court does not have subject matter jurisdiction to deal with any perjury that has been committed before the Court by the testimony at trial, which may violate a federal criminal statute such as 18 U.S.C. § 152(2). Moreover, this Court does not have any authority over the disciplinary sanctions potentially assessable against attorneys who may have violated either the Rules of Professional Conduct for the Northern District of Illinois, which apply in all proceedings and matters before the Court pursuant to Local Bankruptcy Rule 608, or the Illinois Rules of Professional Conduct. The Court is duty-bound to report unprofessional conduct by an attorney under the Code of Conduct for United States Judges, Canon 3(B)(3), *In re Himmel,* 125 Ill.2d 531, 127 Ill.Dec. 708, 533 N.E.2d 790 (1988) and Rule 8.3(a) of the Illinois Rules of Professional Conduct. Consequently, this matter will be referred to the United States Attorney for the Northern District of Illinois pursuant to 18 U.S.C. § 3057, the Executive Committee for the Northern District of Illinois pursuant to Local Rules 83.25 and 83.28 and the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois pursuant to Illinois Supreme Court Rule 751 *et seq.* for such action and further investigation as they deem appropriate.

**IV. CONCLUSION**

For the foregoing reasons, the Court finds the attorney's fees owed to Shevick by the Debtor non-dischargeable under § 523(a)(5) as in the nature of support.

This Opinion serves as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.