**In re Robert L. SKINNER and Sandra R. Skinner, Debtors.**

**Linda S. Skinner, Plaintiff,**

v.

**Robert L. Skinner, Defendant.**

**Bankruptcy No. 01–80161.
Adversary No. 01–8301.**

United States Bankruptcy Court, C.D. Illinois.

July 24, 2002.

---

John S. Narmont, Springfield, IL, Timothy M. Feeney, Rock Island, IL, for Debtors.

Richard Barber, Galesburg, IL, trustee.

### OPINION

THOMAS L. PERKINS, Bankruptcy Judge.

This adversary proceeding came before the Court for trial on May 2, 2002. The Plaintiff, Linda S. Skinner (LINDA), seeks a determination pursuant to Section 523(a)(5) that the obligation of the Debtor, Robert L. Skinner (DEBTOR), to make certain annual payments under the judgment of dissolution is nondischargeable.

### FACTS

The DEBTOR and LINDA were married in 1980. After they separated in the spring of 1996, the parties negotiated an agreement between themselves. Thereafter, they both met with LINDA'S attorney on several occasions. Her attorney pre-pared a Separation Agreement, reflecting the terms of their agreement, which was incorporated into the judgment of dissolution, entered on Jan. 15, 1997. The parties divided their household furnishings and personal effects and the DEBTOR, engaged in farming, kept the machinery and equipment, as well as the stored grain and assumed all of the marital debts. The machinery and equipment constituted the bulk of the marital assets.

Pursuant to Paragraph G of the Separation Agreement, captioned "Maintenance," the DEBTOR agreed to make the following payments:

> The husband shall pay to the wife Three Hundred Dollars ($300.00) a week as and for maintenance for a period of one (1) year, further, the husband shall pay to the wife Ten Thousand Dollars ($10,000.00) a year, on the 1st day of December, for a period of seven (7) years; however, the first payment shall be made within one (1) week of the date of this Judgment.

The DEBTOR made all of the weekly payments and made the annual payments for several years, but at some point the annual obligation was modified at the DEBTOR'S request to require quarterly payments of $2,500.00. The DEBTOR deducted the payments on his tax return.

██ On January 16, 2001, the DEBTOR, still engaged in farming, filed a joint Chapter 11 petition with his new spouse, Sandra R. Skinner. The DEBTOR listed LINDA as an unsecured creditor, and at that time, was behind on one quarterly payment of $2,500.00. The DEBTOR reported gross farming income of $285,219.00 for 1999 and $307,500.00 for 2000. Upon reenactment of Chapter 12 of the Bankruptcy Code, the DEBTORS converted their case. On August 20, 2001, the DEBTORS filed a Chapter 12 plan, treat-

ing LINDA'S claim as unsecured. On Sept. 20, 2001, LINDA filed an objection to the plan, contending that the DEBTORS had misclassified her claim, and that she is entitled to be paid annual maintenance payments of $10,000.00 as ordered by the divorce judgment. LINDA filed this adversary proceeding on November 7, 2001, seeking a determination that the obligation was in the nature of maintenance and nondischargeable. In his answer, the DEBTOR challenged the complaint as untimely and contended that the obligation was not in the nature of support but rather a property settlement, which, based on his inability to pay, would be dischargeable under Section 523(a)(15).[1] Met with strong resistance from their creditors, the DEBTORS were unable to get a plan confirmed or obtain financing for the 2002 crop year, and the case was converted to Chapter 7 on their motion on January 7, 2002.

A trial was held on May 2, 2002, at which both LINDA and the DEBTOR testified. LINDA testified that both she and the DEBTOR were represented by the same attorney in the divorce proceedings.[2] At the time of the divorce, she was not working and she had no job skills. According to her testimony, she and the DEBTOR worked out the terms of the settlement without the assistance of the attorney and they agreed that the DEBTOR'S obligation to make the annual payments was maintenance. A payment of $10,000.00 was to be made on an annual basis in December because that was when the money from the crops came in.

Since the divorce, LINDA has held a series of low-paying jobs. She was currently working thirty-five to forty hours per week at a donut shop earning $7.25 per hour. At the time of trial, she was living with a friend who paid most of her expenses, including rent and food. In addition, he furnished her with a vehicle to drive. LINDA testified that the balance remaining to be paid on the divorce obligation is $27,000.00. She submitted no affidavit itemizing her current expenses.

The DEBTOR testified that at the time of the divorce, the net equity in the marital property was approximately $145,000.00 to $147,000.00. During their initial discussions, LINDA demanded a $60,000.00 to $70,000.00 single payment. The DEBTOR "took" LINDA'S demand as representing her one-half share of the available property. The DEBTOR testified that they met with the attorney two to three times and that he advised the DEBTOR that the payment should be labeled as "maintenance" because characterizing it as such would enable the DEBTOR to deduct the payments from his taxes.

**1.** A complaint to determine the dischargeability of a debt under Section 523(a)(5) may be brought at any time, but a complaint to determine the dischargeability of a debt under Section 523(a)(15) must be brought by the bar date fixed by Rule 4007(c) of the Federal Rules of Bankruptcy Procedure. A discharge under Chapter 12 does not discharge debts under either Section 523(a)(5) or (a)(15). LINDA'S complaint, filed during the Chapter 12 proceeding, but after the bar date for filing Section 523(a)(15) complaints, did not raise that issue. Because conversion of a case to Chapter 7 provides creditors with a new sixty-day period in which to file their discharge-

ability complaints, both the Court and the parties regarded the dischargeability of the debt under Section 523(a)(15) to be at issue. *See* Fed. R. Bankr.Proc. 1019(2). Given the result reached by the Court, it need not determine whether the Section 523(c)(1) mandate, that the debtor is discharged from an (a)(15) debt unless the creditor requests a determination under that provision, would have precluded such relief here.

**2.** According to the recitations of the Judgment, however, the attorney represented only LINDA, and the DEBTOR was acting pro se.

At the time of trial, the DEBTOR was self-employed, buying and selling horses, and living with his new spouse and their two daughters. He reported his net monthly income as $2,500.00 and listed monthly living and business expenses totaling $3,857.00.[3] His current wife receives $384.00 each month for child support.

LINDA contends that the DEBTOR'S obligation to make the annual payments is nondischargeable under Section 523(a)(5), while the DEBTOR takes the position that Section 523(a)(15) applies. The analysis must begin with Section 523(a)(5), which excepts from discharge court-ordered debts in the nature of alimony, maintenance or support, because only if it is determined that the debt does not fall within that provision, does Section 523(a)(15), which excepts property settlements from discharge if the debtor lacks the ability to pay or the benefits to the debtor from discharging the debt outweigh the detrimental consequences to the former spouse, come into play.

Section 523(a)(5) provides in relevant part as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record
. . . .

11 U.S.C. § 523(a)(5).

■ The determination of whether a debt is in the nature of alimony, maintenance, or support is governed by federal bankruptcy law, not–state law, and the bankruptcy court is not bound by the labels which the state court places upon an award. *In re Maitlen,* 658 F.2d 466 (7th Cir.1981); *In re Brodsky,* 239 B.R. 365 (Bankr.N.D.Ill.1999). While exceptions to discharge are ordinarily strictly construed against a creditor, because of the clear Congressional policy to protect former spouses in matters of alimony, maintenance and support, the Section 523(a)(5) exception is construed more liberally. *Matter of Crosswhite,* 148 F.3d 879, 882 (7th Cir.1998). Where, as here, the parties reached an agreement and there was no contested hearing, the focus is on the intent of the parties at the time they entered into the agreement. *In re Reines,* 142 F.3d 970 (7th Cir.1998). Although no one factor is determinative, the initial focus should be on whether the written agreement of the parties clearly expresses an intent to treat the obligation as alimony, maintenance or support. *See, Reines,* at 973. A written agreement, containing the terms of a deal negotiated contemporaneous with entry of the judgment of dissolution, is highly probative of the true intent of the parties at that critical point in time, unmuddied by the shifting currents of subsequent events.

■ The Separation Agreement is without ambiguity. It clearly shows that both LINDA and the DEBTOR intended the annual payments to be maintenance. The obligation is in the midst of the provision captioned "Maintenance" and is distinctly separate from the provisions allocating property and assigning the marital debts. The DEBTOR'S after-the-fact explanation that the annual payments were only characterized as maintenance in order to provide tax benefits to him is contradict-

**3.** The DEBTOR'S total for the listed expenses is incorrectly stated as $2,891.00 on Defen-

dant's Exhibit 2.

ed by LINDA'S testimony and is entitled to little credence, given that he has reaped the benefits of that classification for many years. *See, In re Sillins,* 264 B.R. 894 (Bankr.N.D.Ill.2001). Moreover, the DEBTOR'S contention that his purpose in classifying the annual payments as maintenance was to obtain tax deductibility, even if an accurate reflection of his intent, gains him no ground. It is the DEBTOR'S intent, not his rationale for it, that is the ultimate inquiry. While he may have been motivated purely by his own self-interest, the DEBTOR admittedly intended the payments to be classified as maintenance.

The relative financial circumstances of the parties at the time of the divorce also clearly support the conclusion that the annual payment obligation was intended to serve as LINDA'S source of support. She was not working and had no job skills. She received no marital property of any significant value. She was in dire financial circumstances and her need for support is obvious.

The current circumstances of the parties has no bearing upon this determination. The DEBTOR'S attempt to defeat LINDA'S present right to receive maintenance by pointing out the DEBTOR'S current inability to pay is irrelevant. If, based on changed circumstances, the DEBTOR believes that he ought to be relieved of his continuing obligation to make the annual payments, he should seek appropriate relief in state court.

For the reasons stated herein, the Court finds and determines that the DEBTOR'S obligation designated by the Judgment of Dissolution of Marriage as maintenance, to make seven (7) annual payments of $10,000.00 to LINDA, is actually in the nature of maintenance and, therefore, is nondischargeable pursuant to Section 523(a)(5).

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.