In re R. Clare **GERLACH** and Lois F. Gerlach, Debtors.

**JOHN DEERE COMPANY,**
**Plaintiff–Appellant,**

v.

R. Clare **GERLACH** and Lois F. Gerlach, Defendants–Appellees.

No. 87–2118.

United States Court of Appeals, Tenth Circuit.

March 7, 1990.

John S. Finn of Nelson & Harding, Denver, Colo., for plaintiff-appellant.

Michael J. Guyerson of Rothgerber, Appel, Powers & Johnson, Denver, Colo., for defendants-appellees.

Before LOGAN, SETH and TACHA, Circuit Judges.

LOGAN, Circuit Judge.

Plaintiff John Deere Company sought a determination in the bankruptcy court that the debt owed it by defendant R. Clare Gerlach is not dischargeable in the bankruptcy of defendant and his wife because it was procured through fraud. The bankruptcy court held that the entire debt is dischargeable, and the district court affirmed. We reverse and remand for a determination of the amount of the debt that is not dischargeable.

In 1977, defendant and his son formed a corporation to hold a John Deere dealership. Pursuant to the dealership arrangement, defendant personally guaranteed all of the corporate debts to John Deere. Although defendant eventually sold all of his ownership interest in the dealership, he remained liable for its debts to John Deere.

John Deere financed, on a secured basis, the machinery and equipment that sat on the dealership's lot for resale, the debt on a particular piece of equipment to become due on resale. John Deere also gave unsecured credit on open account to the dealership for miscellaneous items, such as parts, insurance, advertising, and freight charges, requiring monthly payments on this account. When the dealership sold a piece of equipment, John Deere would also finance the purchaser and give the dealership credit for the sale against its debts to John Deere. The dealership could apply this credit toward its monthly account payment to John Deere.

Some time in 1984 the dealership began experiencing financial difficulties. In order to meet its monthly payments to John Deere, defendant's son, who managed the business, would arrange for various parties to enter into purchase contracts for equipment. The credit generated from these contracts allowed the dealership to meet its monthly obligations to John Deere, but the purchases were, in fact, shams. None of the parties ever intended to complete these purported purchases, and the paperwork was often submitted for John Deere's approval with seller and purchaser both knowing it would be rejected. But John Deere gave the dealership immediate provisional credit when the contracts were submitted and revoked the credit only when the contracts were rejected. The dealership would carefully time the submission of these sham contracts so that the provision-

al credit would satisfy one monthly payment and would not be revoked until the subsequent month. Thus, the phony contracts had the effect of giving the dealership an extra month in which to make the payments represented by the provisional credit. Defendant was never involved in the day-to-day management of the dealership. At his son's request, however, he did sign one sham purchase contract submitted in June 1985, knowing that the effect would be to buy the dealership some time in making its payments to John Deere.

In August 1985, when the dealership missed its monthly payment and John Deere discovered the dealership's financial problems, the dealership was closed. It has been unable to satisfy all of its debts to John Deere. Because defendant remained personally liable on the dealership's debts to John Deere, that company sought, in defendant's bankruptcy case, to have defendant's guaranty liability excepted from discharge as a debt obtained through fraud under 11 U.S.C. § 523(a)(2)(A). The bankruptcy court held that the entire amount of defendant's debt to John Deere was dischargeable, and the district court affirmed. The primary issue on appeal is whether defendant's fraudulent conduct allowed the dealership to obtain "money, property, services, or an extension, renewal, or refinancing of credit" within the meaning of § 523(a)(2).

The bankruptcy court found that by entering into the phony purchase contract, defendant intentionally deceived John Deere into granting the dealership provisional credit, and that John Deere reasonably relied upon defendant's sham contract in extending the provisional credit. Still, the bankruptcy court said that John Deere failed to prove that it was damaged in a sum certain or in any way by defendant's fraudulent conduct, and the district court accepted this finding. John Deere argues that the bankruptcy court applied an improper measure of damages, and we agree.

■ Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge "any debt ... for money, property, services, or an *extension, renewal, or refinancing* of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A) (emphasis added). Therefore, not only is a new debt procured through fraud excepted from discharge, but old debt which is extended, renewed, or refinanced through fraud is also nondischargeable. *See Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1288–89 (8th Cir.1987); 3 *Collier on Bankruptcy* ¶ 523.08, at 523–40, & ¶ 523.10 (L. King 15th ed. 1989).

An extension, within the meaning of § 523(a)(2), is "an indulgence by a creditor giving his debtor further time to pay an existing debt." *Takeuchi Mfg. (U.S.), Ltd. v. Fields (In re Fields)*, 44 B.R. 322, 329 (Bankr.S.D.Fla.1984) (quoting *State v. Mestayer*, 144 La. 601, 80 So. 891, 892 (1919)). The Bankruptcy Code, therefore, protects a creditor "who is deceived into forbearing from collection without being given an opportunity to grant or deny the extension of credit." *Id.; cf. Zarate v. Baldwin (In re Baldwin)*, 578 F.2d 293, 295 (10th Cir.1978) (debt on fraudulently induced settlement agreement is nondischargeable because creditor "forwent her right to pursue her claim to judgment after trial").

■ Defendant's fraudulent conduct clearly allowed the dealership to obtain an extension of credit in the amount of the provisional credit John Deere granted the dealership on the phony purchase contract defendant signed.[1] Even though, as the bankruptcy court emphasized, "such credit was withdrawn when the contract was rejected shortly thereafter," I R. 19, defendant's fraudulent contract had its intended effect of giving the dealership more time in which to pay the amount of the subsequently revoked provisional credit. *Cf. Bear Stearns & Co. v. Kurdoghlian (In re Kurdoghlian)*, 30 B.R. 500, 502 (Bankr. 9th Cir.1983) (payment by check knowing the

---

1. Since defendant was personally liable on the dealership's debts to John Deere, it is immaterial that the credit was extended to the dealership rather than defendant. *See European Am. Bank v. Gitelman (In re Gitelman)*, 74 B.R. 492, 493, 496 (Bankr.S.D.Fla.1987); 3 *Collier on Bankruptcy* ¶ 523.08[1].

check will be dishonored); *Wheeling Wholesale Grocery Co. v. Piccolomini (In re Piccolomini),* 87 B.R. 385, 387–88 (Bankr.W.D.Pa.1988) (payment with post-dated check); *Fields,* 44 B.R. at 329 (concealing resale to postpone paying debt due on resale).

The bankruptcy court cited Colorado law on tortious fraud for the proposition that John Deere must prove it was damaged by its reliance upon defendant's phony contract. While state fraud law may often be helpful by analogy in interpreting the scope of the fraud exceptions to discharge, "the dischargeability of a fraudulently incurred debt and the measure of damages for the underlying fraud are separate and distinct questions." *Birmingham Trust Nat'l Bank v. Case,* 755 F.2d 1474, 1477 (11th Cir.1985). Section 523(a)(2), by its terms, only requires an objecting creditor to prove an extension of credit was "obtained by" fraud for the debt to be excepted from discharge.

Several courts go beyond the plain meaning of the statute and preclude discharge only to the extent an objecting creditor can prove damages—reduction in the ultimate recovery on the debt caused by forbear-ance. *E.g., Muleshoe State Bank v. Black,* 77 B.R. 91, 92–93 (N.D.Tex.1987); *Goodnow v. Adelman (In re Adelman),* 90 B.R. 1012, 1022–24 (Bankr.D.S.D.1988); *First Bank (N.A.) v. Eaton (In re Eaton),* 41 B.R. 800, 803 (Bankr.E.D.Wis.1984); *cf. F & M Marquette Nat'l Bank v. Richards (In re Richards),* 81 B.R. 527, 530–31 (Bankr.D.Minn.1987) (affirmative defense). But we will not adopt such a requirement, because "the plain language of the statute suggests that dischargeability is an 'all or nothing' proposition." *Birmingham Trust,* 755 F.2d at 1477.[2]

In the bankruptcy court, there was evidence that not only did defendant's spurious contract allow the dealership to postpone its account payment for a month, it also allowed the dealership to continue obtaining unsecured credit from John Deere during that ensuing month. A John Deere employee testified that if the dealership had not been able to meet its monthly account payment, John Deere either would have required cash on delivery for all shipped parts or would have discontinued shipments and closed the dealership, as it did when it discovered the dealership's precarious financial condition. III R. 35–37.

**2.** Some courts hold that the 1984 amendments to § 523(a)(2), Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 454(a)(1), 98 Stat. 333, 375–76, invalidate the *Birmingham Trust* interpretation. *E.g., Muleshoe,* 77 B.R. at 92; *Adelman,* 90 B.R. at 1022–23. We believe that the 1984 amendments, at least in the context of this case, reinforce and make more explicit the distinction between tort damages and dischargeability. *Compare* 11 U.S.C.A. § 523(a)(2) (1979) (debt "for obtaining" an extension of credit by fraud is nondischargeable) *with* 11 U.S.C.A. § 523(a)(2) (Supp.1989) (debt for extension of credit is nondischargeable "to the extent obtained by" fraud).

Our opinion in the instant case is not in conflict with *Central Nat'l Bank & Trust Co. v. Liming (In re Liming),* 797 F.2d 895, 898 (10th Cir.1986). In *Liming* we held that fraud in the procurement of the initial loan was carried over into the renewed loan. The loan was thus held nondischargeable despite the bank's renewal of the loan under nonfraudulent conditions. In the instant case, we hold that use of fraud to obtain an extension of a debt originally procured nonfraudulently also renders the debt nondischargeable. Consistent application of contract law theory on whether extension or renewal of a debt constitutes a novation does not reconcile these two holdings, but both are fully supported by the legislative history of § 523(a)(2):

"The amount of the debt made nondischargeable ... is not limited to 'new value' when a loan is rolled over. If an initial loan is made subject to a false financial statement and new money is advanced under a subsequent loan that is not made under conditions of fraud or false pretenses, then only the initial amount of the loan made on the original financial statement is invalidated and excepted from discharge. On the other hand, where the original financial statement is made under nonfraudulent conditions and the entire loan in addition to new money is advanced under a subsequent false financial statement, the entire loan is made under fraudulent conditions."

H.R.Rep. No. 595, 95th Cong., 1st Sess. 129–30 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6090–91; *see also* 3 *Collier on Bankruptcy* ¶ 523.10, at 523–67. Although this is legislative history of the 1978 version of the Code, there is no reason to conclude that the 1984 amendments were anything but technical and cosmetic. We have found no legislative history reflecting that Congress intended to significantly alter the rights and obligations of creditors and debtors governed by this section.

On remand, if the bankruptcy court accepts this testimony as true, it also should treat new unsecured credit John Deere extended to the dealership in the month following submission of defendant's fraudulent contract as debt "obtained by" defendant's fraud. *Cf. Kurdoghlian*, 30 B.R. at 502 (fraudulently submitting bad checks to cover deficit in securities trading account allowed debtor to continue trading and incurring debt); *European Am. Bank v. Gitelman (In re Gitelman)*, 74 B.R. 492, 493–94 (Bankr.S.D.Fla.1987) (fraudulent scheme not only allowed debtors to pay down their line of credit, but induced lender to renew and increase line); *Green v. Southern Poultry Co.*, 275 Ala. 138, 152 So.2d 685, 687 (1963) (fraudulently submitting bad check to satisfy old debt induced seller to ship more goods on credit). Credit extended after that following month apparently was not attributable to defendant's fraudulent contract but to other frauds of defendant's son.

The bankruptcy court also found that John Deere failed to prove damages in a "sum certain." I R. 19. "Exceptions to discharge are construed narrowly," therefore, "[a] creditor seeking to have a debt declared nondischargeable ... must prove that it comes within the statute by clear and convincing evidence." *Driggs v. Black (In re Black)*, 787 F.2d 503, 505 (10th Cir. 1986). However, the debtor rehabilitation policy which motivates these rules is "applicable only to honest debtors." *Jennen v. Hunter (In re Hunter)*, 771 F.2d 1126, 1130 (8th Cir.1985).

If a creditor can prove by clear and convincing evidence that the debtor obtained credit through fraud, the court should declare the debt nondischargeable in an amount which it can reasonably estimate as obtained by the fraud. *Cf.* Restatement (Second) of Torts § 912 & comment a (1979) (burden of proof of existence of tort damages is same as for all other elements of cause of action, but need only prove amount of damages "with as much certainty as the nature of the tort and the circumstances permit"). And a debt is "obtained by" fraud if the fraud is a substantial factor in the creditor's decision. *Lincoln First Bank, N.A. v. Tomei (In re Tomei)*, 24 B.R. 204, 206 (W.D.N.Y.1982) (citing *First Nat'l Bank v. Clancy (In re Clancy)*, 279 F.Supp. 820, 822 (D.Colo.1968), *aff'd*, 408 F.2d 899 (10th Cir.), *cert. denied*, 396 U.S. 958, 90 S.Ct. 430, 24 L.Ed.2d 422 (1969)); *see Central Nat'l Bank & Trust Co. v. Liming (In re Liming)*, 797 F.2d 895, 897–98 (10th Cir.1986) (partial reliance is sufficient); *cf.* Restatement (Second) of Torts § 546 & comment b (1977) (reliance is sufficient if fraud was substantial factor in plaintiff's decision).[3]

REVERSED and REMANDED for a determination of the amount of defendant's guaranty debt to John Deere that was obtained through defendant's fraud.

---

**3.** John Deere also argues that the bankruptcy court should have considered another sham contract as evidence of defendant's fraud. The bankruptcy court refused to consider this contract as evidence of fraud, because defendant's son forged defendant's signature on the contract "without knowledge, agency or authority by his father." I R. 17. John Deere argues in the alternative either that defendant's conduct represented fraud by nondisclosure or that defendant's son had authority to sign the contract on his behalf. The bankruptcy court was of the opinion that the evidence did not support either of these theories, and we cannot conclude that these findings are clearly erroneous.