**In re Leonard G. MARX and Billie J. Marx, Debtors.**

**CODISCO, INC., d/b/a Coastline of Daytona Beach, Plaintiff,**

**v.**

**Leonard G. MARX and Billie J. Marx, Defendants.**

**Bankruptcy No. 90–2941–BKC–3P7. Adv. No. 90–269.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

March 31, 1992.

Armistead W. Ellis, Jr., Daytona Beach, Fla., for defendants.

David C. Willis, Orlando, Fla., for plaintiff.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding is before the Court upon the complaint of Codisco, Inc. seeking to except a debt from discharge pursuant to 11 U.S.C. § 523(a)(2). A trial was held on December 18, 1991. After the closing of the plaintiff's case, the Court granted the motion to dismiss as to defendant, Billie J. Marx, based on Federal Rule of Civil Procedure 41(b) and Federal Rule of Bankruptcy Procedure 7041. Accordingly, only Leonard G. Marx remains as a defendant in this proceeding. Upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law:

## Findings of Fact

Defendant was a shareholder and officer of Marx Air Conditioning, Inc. ("Marx"). On December 28, 1987, Marx applied for a credit account with plaintiff. Defendant and wife agreed in writing to personally guarantee Marx's account with plaintiff. In reliance upon the guarantee, plaintiff opened an account for Marx.

In July, 1989, Marx fell into arrears in paying the account. Plaintiff declared the account in default and ceased making credit sales. Plaintiff also demanded that the account be brought current and called upon defendant and his wife to honor their guarantee.

In order to satisfy their guarantee, defendant and his wife offered to execute a promissory note secured by a mortgage on commercial property owned by defendant. To induce plaintiff to accept such arrangement, defendant presented plaintiff with a copy of a letter appraisal prepared by Ken McCall in February, 1989, valuing the property at $305,000.00.

Prior to accepting the note and mortgage, defendant and his wife met with two of plaintiff's officers. During the meeting, the parties discussed the appraisal and defendant informed plaintiff's representatives that the commercial property was encumbered by two other mortgages totaling approximately $205,000.00. Plaintiff ultimately agreed to accept the note and mortgage.

Consequently, on July 17, 1989, defendant and his wife executed a promissory note in the principal amount of $128,670.71, representing the outstanding balance of the credit account. In exchange for the note and mortgage, plaintiff agreed not to take legal action to collect Marx's account and agreed to extend additional credit.

Over the next two months, plaintiff extended additional credit to Marx in the amount of $22,583.76. Marx then made payments on the oldest outstanding invoices. As a result of these purchases and payments, the outstanding balance on the account increased to $135,184.07. Marx again fell into arrears on its payments, causing plaintiff to declare the account in default and to cease further credit sales.

During the proceedings to enforce the promissory note and mortgage, plaintiff discovered that the copy of the letter appraisal presented to it by defendant had been altered. The true appraised value of the property, according to the appraiser Ken McCall, was $205,000.00. Thus, given the value of the prior mortgages, the mortgage granted to plaintiff was worthless.

The appraiser testified that defendant had contacted him and requested the appraisal. Defendant inquired several times by telephone concerning the status of the appraisal. During one conversation, Mr. McCall informed defendant that the property was worth $205,000.00. Thus, defendant knew that the $305,000.00 appraisal was false when he presented it to plaintiff to obtain refinancing.

Plaintiff relied on the appraisal when deciding to accept the note and mortgage rather than pursue its remedies as they then existed. Had plaintiff known the true appraised value of the property, it would not have accepted the note and mortgage and would not have extended additional credit. Instead, plaintiff would have immediately instituted legal action against defendant and his wife premised on their personal guarantee.

The issue before the Court is whether the portion of defendant's debt constituting credit originally extended under non-fraudulent circumstances but subsequently renewed or refinanced through fraud is non-dischargeable.

## Conclusions of Law

The resolution of this proceeding is governed by 11 U.S.C. § 523(a)(2)(A) which provides in relevant part:

(a) A discharge under ... this title does not discharge an individual debtor from any debt—

. . . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

. . . . .

(A) false pretenses, a false representation, or actual fraud....

To prevail on a claim under this section, a creditor must show the following:

(i) the debtor made a false representation with the purpose and intention of deceiving the creditor;

(ii) the creditor relied on such representation;

(iii) his reliance was reasonably founded; and

(iv) the creditor sustained a loss as a result of the representation.

*In re Graham,* 122 B.R. 447, 450 (Bankr. M.D.Fla.1990); *In re Hunter,* 780 F.2d 1577, 1579 (11th Cir.1986). The plaintiff has the burden of proving each of these elements by a preponderance of the evidence. *Grogan v. Garner,* —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

 In the instant case, defendant presented plaintiff with an altered copy of the appraisal which induced plaintiff to accept the promissory note and mortgage, thus renewing the credit account and granting additional credit. From such actions, the intent to deceive can be inferred.

Plaintiff relied on the appraisal in making its decision to renew the loan and extend additional credit. Plaintiff suffered a loss when the renewal and extension were made because the mortgage ultimately proved to be of no value.

The evidence indicates that defendant knew the appraisal had been altered when it was presented to plaintiff. The appraiser testified that he had orally advised defendant that the appraised value of the land was $205,000.00. Accordingly, the plaintiff has carried its burden of proof with regard to the remaining defendant.

The sole issue remaining for determination is the extent to which the debt is dischargeable. At the time of the execution of the promissory note and mortgage, defendant was indebted to plaintiff for $128,670.71 as a result of his personal guarantee. Thereafter, plaintiff extended additional credit to Marx in the amount of $22,583.76. In addition, several payments on the note were made and credits were issued by plaintiff. Consequently, at the time of trial the total indebtedness had reached $135,184.07.

Section 523(a)(2)(A) excepts from discharge "any debt ... for money, property or services or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation or actual fraud." The "new credit" extended by plaintiff in the amount of $22,-583.76 was clearly obtained by fraud. Plaintiff would not have extended additional credit if it had known the true appraised value of the property. Therefore, the "new credit" was obtained by false pretenses, false representation, or actual fraud and is excepted from defendant's discharge.

 The "old credit," extended prior to the deceitful conduct and then renewed based on the fraudulently procured promissory note and mortgage, is also excepted from discharge. An "extension of credit" within the meaning of § 523(a)(2) is "an indulgence by a creditor giving his debtor further time to pay an existing debt." *In re Fields,* 44 B.R. 322, 329 (Bankr.S.D.Fla. 1984) (quoting *State v. Mestayer,* 144 La. 601, 80 So. 891, 892 (1919)). Furthermore, § 523(a)(2) specifically references the *renewal* or *refinancing* of credit. These terms necessarily contemplate the prior granting of credit to the debtor and arrangements to continue the credit when the debtor cannot repay according to the original terms. Thus, the Bankruptcy Code protects the creditor who is deceived into forbearing collection efforts. *Id.; see also In re Baldwin,* 578 F.2d 293, 295 (10th Cir. 1978).

 This interpretation is fully supported by the legislative history of § 523(a)(2) which provides in relevant part:

The amount of the debt made nondischargeable ... is not limited to 'new value' when a loan is rolled over. If an initial loan is made subject to the false financial statement and new money is advanced under a subsequent loan that is not made under conditions of fraud or false pretenses, then only the initial amount of the loan made on the original financial statement is invalidated and ex-

cepted from discharge. On the other hand, where the original financial statement is made under non-fraudulent conditions and the entire loan in addition to new money is advanced under a subsequent false financial statement, the entire loan is made under fraudulent conditions.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 129–30 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.New 5787, 6090–91. Thus a finding that the exception to discharge provisions of § 523(a)(2) are limited to "new value" would be contrary to the intent of Congress as well as the unambiguous language of the statute.

The bankruptcy laws are designed to furnish relief for the honest but unfortunate debtor. Through the fraud exceptions to discharge, Congress intended to provide that such relief be limited to honest debtors, thus discouraging fraud. *Birmingham Trust National Bank v. Case,* 755 F.2d 1474, 1476–77 (11th Cir.1985). Accordingly, this Court holds that the exception to discharge provision of § 523(a)(2) is not limited to new value. *In re Gerlach,* 897 F.2d 1048, 1050 (10th Cir.1990). *See also In re Van Horne,* 823 F.2d 1285, 1289 (8th Cir.1987); *In re Duncan,* 123 B.R. 383, 386 (Bankr.C.D.Calif.1991).

In the instant case, Marx's account was in default in July, 1989. Plaintiff had stopped selling on credit, was demanding that the account be brought current, and was looking to defendant for payment under his personal guarantee. Unable to bring the account current, defendant fraudulently induced plaintiff to accept a promissory note secured by a mortgage on real property he owned. Relying on the forged appraisal, plaintiff agreed to withhold efforts to collect the outstanding account, allowing defendant additional time to pay off the account, and provided additional credit. Thus, plaintiff detrimentally relied on the forged document when it renewed the credit account. Consequently, the "old credit," as well as the new credit is nondischargeable.

Pursuant to 11 U.S.C. § 523(a)(2)(A), the debt owed by defendant to plaintiff will be excepted from defendant's discharge.

A separate Final Judgment dismissing defendant, Billie J. Marx, and finding in favor of plaintiff against defendant, Leonard G. Marx, will be entered.