**In re Stanislaw BRZAKALA, Debtor.**

**Tadeusz and Janina Bednarsz,
Plaintiffs,**

**v.**

**Stanislaw Brzakala, Defendants.**

**Nos. 03 B 20884, 03 A 3868.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 10, 2004.

Robert D. Gordon, Chicago, IL, for Debtor.

Daniel Rozenstrauch, Chicago, IL, for Plaintiffs.

## MEMORANDUM OPINION AND ORDER

A. BENJAMIN GOLDGAR, Bankruptcy Judge.

This matter is before the court on the motion of debtor-defendant Stanislaw Brzakala to dismiss the amended complaint of plaintiffs Tadeusz and Janina Bednarsz. The complaint asks this court to find Brzakala's $81,620 debt to the Bednarszes nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (B). For the reasons that follow, the motion is granted in part and denied in part.

### 1. Jurisdiction

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1334(a) and 157(a), and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). The court accordingly may enter a final judgment, *In re Smith*, 848 F.2d 813, 816 (7th Cir.1988).

### 2. Background

The amended complaint and accompanying exhibits contain the following facts. In early 1998, the Bednarszes lent one Mariusz Kaczmarczyk $223,000, in return for which Kaczmarczyk executed and delivered to the Bednarszes a promissory note in that amount. (Am. Compl., Ex. A at 2). The note required Kaczmarczyk to repay the Bednarszes with a single payment to be made on April 30, 1998. (*Id.*).

On June 20, 1998, D & M Developers, Ltd. ("D & M"), an Illinois corporation, delivered to the Bednarszes a check for $30,000 in partial payment of the note.

(*Id.* at ¶ 6 and Ex. A at 3). On July 15, 1998, D & M delivered to the Bednarszes a second check, this time for $243,000, in payment of the note. (*Id.*).

It is unclear what relationship Kaczmarczyk has with D & M or, for that matter, what relationship the debtor Brzakala has with either one. The amended complaint alleges only that D & M issued the checks to the Bednarszes "through Debtor Brzakala." (*Id.* at ¶ 6). The allegation is not explained, and the amended complaint offers nothing more.[1] The signatures on the checks are illegible. (*Id.*, Ex. B, C). The amended complaint assumes, however, that Brzakala signed them. (*See id.* at ¶ 14).

Regardless, both checks turned out to be uncollectible because the checks were issued on closed accounts. (*Id.* at ¶ 7 and Exs. B, C). In October 1998, the Bednarszes therefore brought an action against Kaczmarcyk (on the note) and against Brzakala and D & M (for issuing the bad checks) in the Circuit Court of Cook County, Illinois. (*Id.* at ¶ 5 and Ex. A). Against Brzakala the Bednarszes requested $243,000 in damages. (*Id.*, Ex. D).

Four years later, the parties settled the action. Brzakala agreed to pay the Bednarszes $77,000 within 90 days and also agreed to issue a mortgage to the debtors in the same amount on property Brzakala owned in Lake Forest. (*Id.* at ¶ 8 and Ex. D). The settlement agreement was signed by all the parties and incorporated into a court order, which the circuit court retained jurisdiction to enforce. (*Id.*, Ex. D).

But Brzakala failed to comply with his obligations under the settlement agreement. (*Id.* at ¶ 9). On March 5, 2003, the circuit court accordingly entered a judgment for $81,620 against Brzakala and in favor of the Bednarszes. (*Id.* at ¶ 9 and Ex. E). Brzakala has paid only $6,000 toward satisfaction of the judgment. (*Id.* at ¶ 10).

Faced with the judgment, Brzakala filed a petition for relief under chapter 7 of the Bankruptcy Code on May 9, 2003. In September 2003, the Bednarszes filed their adversary complaint against Brzakala asserting that his debt to them is nondischargeable under sections 523(a)(2)(A) and (B) of the Code.[2] The Bednarszes allege that Brzakala "obtained the underlying debt by fraud, false pretenses, and false writings," inasmuch as he wrote the checks and executed the settlement agreement not intending to fulfill, and knowing he could not fulfill, his obligations under them. (Compl. at ¶ 14).

Brzakala moved to dismiss the complaint. After the complaint was amended, he also moved to dismiss the amended complaint—the motion currently before the court. According to Brzakala, the Bednarszes do not allege in the amended complaint "that any money or property was obtained by the NSF checks but rather [that] they were payments on account." Therefore, Brzakala concludes, the amended complaint fails to state a claim under sections 523(a)(2)(A) or (B).

The court set a briefing schedule on the motion, but neither party filed a brief. The court thus has only Brzakala's motion before it.

---

**1.** The initial complaint did not even allege this much. The complaint was amended and additional exhibits attached after the court noted at a status hearing that the initial complaint did not connect Brzakala with the underlying debt at all.

**2.** The Bednarszes ask in their amended complaint that $81,620 be excepted from discharge. If, as the Bednarszes allege, Brzakala paid $6,000 on the $81,620 judgment, they are owed at most $75,620.

### 3. Discussion

Though pled as a single count, the Bednarszses' amended complaint actually contains efforts at four separate claims. Two are based on the bad checks—a claim under section 523(a)(2)(A) and a claim under section 523(a)(2)(B). Two others are based on the settlement agreement—again a claim under section 523(a)(2)(A) and a claim under section 523(a)(2)(B).

On a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P. 12(b)(6) (made applicable in Bankruptcy Rule 7012(b)), the court accepts the allegations of the complaint as true, drawing all reasonable inferences in favor of the plaintiff. *Hickey v. O'Bannon*, 287 F.3d 656, 657 (7th Cir. 2002). Dismissal is proper " 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Weizeorick v. ABN AMRO Mortgage Grp., Inc.*, 337 F.3d 827, 829 (7th Cir.2003) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)), *cert. denied*, —— U.S. ——, 124 S.Ct. 1418, 158 L.Ed.2d 83, 72 U.S.L.W. 3421, 3535 (Feb. 24, 2004) (No. 03–859); *see also United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir.2003) (noting that complaint states a claim "when it narrates an intelligible grievance that, if proved, shows a legal entitlement to relief").

Of the four purported claims in the Bednarszses' amended complaint, only one meets this standard. The other claims are dismissed.

### a. The Section 523(a)(2)(B) Claims

The Bednarszses' amended complaint states no claim under section 523(a)(2)(B)—not in connection with the bad checks and not in connection with the settlement agreement.

■ Section 523(a)(2)(B) of the Code excepts from discharge

(a) ... any debt (2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by ... (B) use of a statement in writing (i) that is materially false; (ii) respecting the debtor's ... financial condition; (iii) on which the creditor to whom the debtor is liable ... reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B). A claim under this section has five elements: (1) the debtor made a statement in writing; (2) the statement was materially false; (3) the statement concerned the debtor's financial condition; (4) the debtor intended to deceive the creditor; and (5) the creditor reasonably relied on the statement. *In re Sheridan*, 57 F.3d 627, 633 (7th Cir.1995); *Phillips v. Napier*, 205 B.R. 900, 905 (Bankr.N.D.Ill.1997); *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 961 (Bankr.N.D.Ill.1995).

■ Putting aside other flaws the section 523(a)(2)(B) claims here may have, those claims plainly lack a critical element: a written statement "respecting the debtor's financial condition." To satisfy section 523(a)(2)(B), the statement must do more than just prompt speculation about the debtor's finances. It must be "sufficient to determine financial responsibility." *In re Price*, 123 B.R. 42, 45 (Bankr.N.D.Ill.1991). In the case of an individual, for example, "statements of income and expenses or schedules of assets and liabilities" will qualify. *Id.* Transactional documents that merely imply a certain financial status, on the other hand, will not. *See, e.g., In re Segal*, 195 B.R. 325, 332 (Bankr.E.D.Pa. 1996) (finding lease and promissory note insufficient); *City Fed. Sav. Bank v. Seaborne (In re Seaborne)*, 106 B.R. 711, 714

(Bankr.M.D.Fla.1989) (finding loan closing documents insufficient).

The Bednarszes here appear to allege that the two uncollectible checks and the settlement agreement are statements "respecting the debtor's financial condition." They are not. A bad check is not a statement of any kind, much less a false statement about someone's financial condition. *See Williams v. United States,* 458 U.S. 279, 284, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982) (holding that bad check was not a "false statement" for purposes of criminal statute and noting that "a check is not a factual assertion at all"). As for the settlement agreement, it never mentions Brzakala's financial condition. It simply contains promises on Brzakala's part to pay a sum of money and to grant a mortgage in return for the dismissal of a civil action. Inferences that might be drawn about Brzakala's financial condition from those promises are not enough to bring the settlement agreement under section 523(a)(2)(B).

Because the amended complaint alleges no statement respecting Brzakala's financial condition, it fails to state a claim under section 523(a)(2)(B).

### b. The Section 523(a)(2)(A) "Bad Checks" Claim

The Bednarszes' amended complaint also states no section 523(a)(2)(A) claim, at least not one based on the bad checks.

Section 523(a)(2)(A) of the Code exempts from discharge

(a) ... any debt (2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's ... financial condition.

11 U.S.C. § 523(a)(2)(A). To make out a claim under section 523(a)(2)(A), a creditor must prove that (1) the debtor made a false representation of fact (2) which the debtor (a) either knew to be false or made with reckless disregard for its truth and (b) made with an intent to deceive, and (3) the creditor justifiably relied on the false representation. *In re Bero,* 110 F.3d 462, 465 (7th Cir.1997); *Citibank (S.Dakota), N.A. v. Michel,* 220 B.R. 603, 605 (N.D.Ill. 1998); *Golant v. Care Comm, Inc.,* 216 B.R. 248, 253 (N.D.Ill.1997).

The bad check claim under section 523(a)(2)(A) fails for two reasons. First, a section 523(a)(2)(A) claim requires a false representation of fact, *Michel,* 220 B.R. at 605, and again a check "is not a factual assertion at all," true or false, *Williams,* 458 U.S. at 284, 102 S.Ct. 3088 (1982). A check is simply an instruction to a bank to pay the face amount of the check to the bearer. *Id.* Citing *Williams,* the Seventh Circuit held more than a decade ago that a bad check is not a misrepresentation for purposes of section 523(a)(2)(A), *see Goldberg Sec., Inc. v. Scarlata (In re Scarlata),* 979 F.2d 521, 525 (7th Cir.1992), a proposition that by now is well-established, *see Mega Marts, Inc. v. Trevisan (In re Trevisan),* 300 B.R. 708, 716–17 (Bankr. E.D.Wis.2003); *but see Bryson,* 187 B.R. at 959–60 (noting split of authority on the question).

Second, as Brzakala correctly argues, the amended complaint does not allege (and could not allege) that Brzakala obtained anything by writing the bad checks. Section 523(a)(2)(A) not only requires a misrepresentation, it requires that through the misrepresentation the debtor have "obtained" either "money, property, services, or an extension, renewal or refinancing of credit." 11 U.S.C. § 523(a)(2)(A); *see generally Golant,* 216 B.R. at 253–54. Here, however, the Bednarszes allege that the checks in question

were issued solely in payment of a prior debt, the debt represented by the promissory note. Brzakala obtained nothing through writing the checks—not money, property, or anything else—and the amended complaint nowhere suggests that he did.

Because the bad checks were not misrepresentations, and because Brzakala obtained nothing by issuing them, the amended complaint fails to state a claim under section 523(a)(2)(A) based on the bad checks.

### c. The Section 523(a)(2)(A) "Settlement Agreement" Claim

The section 523(a)(2) claim based on the settlement agreement, however, is another matter. That claim appears to be viable.

Unlike the bad check claim, the settlement agreement claim in the amended complaint pleads the necessary misrepresentation. The Bednarszes allege that in the settlement agreement Brzakala made promises to pay them $77,000 and to issue them a mortgage on property he owned in Lake Forest; that Brzakala did so never intending to fulfill those promises and knowing he was unable to fulfill them; and that in fact he did not fulfill them, breaching the settlement agreement. (Am. Compl. at ¶¶ 8–9, 14 and Ex. D).

These allegations satisfy section 523(a)(2)(A). For purposes of that section, it is true, the misrepresentation generally must "relate to a present or past fact," and a promise to pay in future, even if false, is not such a misrepresentation. *Shea v. Shea (In re Shea)*, 221 B.R. 491, 496 (Bankr.D.Minn.1998). A promise to pay made with a *present intention* not to perform, however, will satisfy the misrepresentation requirement. *Id.; see also McCrary v. Barrack (In re Barrack)*, 217 B.R. 598, 606 (9th Cir. BAP 1998); 4 A.

Resnick & H. Sommer, eds., *Collier on Bankruptcy* ¶ 523.08[1][d] at 523–44. That is the sort of misrepresentation the amended complaint here alleges.

Unlike the bad check claim, the settlement agreement claim in the amended complaint also alleges that Brzakala "obtained" something through his misrepresentation. Section 523(a)(2) applies not only to a debtor who obtains money, property or services by his deception. It also applies to a debtor who obtains an "extension, renewal or refinancing of credit." 11 U.S.C. § 523(a)(2). An "extension of credit" is "an indulgence by a creditor giving his debtor further time to pay an existing debt." *John Deere Co. v. Gerlach (In re Gerlach)*, 897 F.2d 1048, 1050 (10th Cir.1990) (internal quotation omitted). Section 523(a)(2) therefore protects a creditor deceived into forbearing collection efforts. *Id.; see also Codisco, Inc. v. Marx (In re Marx)*, 138 B.R. 633, 636 (Bankr.M.D.Fla.1992).

The amended complaint alleges a forbearance of collection on the part of the Bednarszes. Rather than pursue their action in the circuit court, they agreed to a settlement that was highly beneficial to Brzakala. As a result of the settlement agreement's execution, Brzakala settled a $243,000 claim for a $77,000 payment and a $77,000 mortgage—a substantial saving. (Am.Compl., Ex. D). Brzakala also managed to postpone payment: the payment under the settlement agreement was not due until 90 days after the order incorporating the settlement was entered. (*Id.*).

The amended complaint's allegations that Brzakala induced the Bednarszes to enter into a settlement agreement he had no intention of performing states a claim for relief under section 523(a)(2)(A). *See Zarate v. Baldwin*, 578 F.2d 293, 295 (10th Cir.1978) (holding debt on fraudulently induced settlement agreement non-dis-

chargeable because creditor "forwent her right to pursue her claim to judgment").[3]

### 4. Conclusion

The motion of debtor-defendant Stanislaw Brzakala to dismiss the amended complaint of plaintiffs Tadeusz and Janina Bednarsz is granted in part and denied in part. The motion is granted as to all claims under 11 U.S.C. § 523(a)(2)(B) and as to the claim under 11 U.S.C. § 523(a)(2)(A) relating to the checks. Those claims are dismissed. The motion is denied as to the claim under 11 U.S.C. § 523(a)(2)(A) relating to the settlement agreement. The debtor-defendant shall file his answer to the amended complaint's remaining claim in 14 days.

**3.** This does not mean, of course, that the Bednarszes will be able to prove their claim. Among other things, it may be difficult to prove that Brzakala never intended to comply with the settlement agreement. Where a section 523(a)(2)(A) claim is based on a failure to perform contractual duties, the requisite intent can be inferred from the debtor's failure "to take any steps to perform under the contract." 4 A. Resnick & H. Sommer, *supra*, ¶ 523.08[1][d] at 523–44. Brzakala's payment of $6,000 under the settlement agreement (*see* Am. Compl. at ¶ 10) would tend to dispel such an inference here.