# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-30649

United States Court of Appeals
Fifth Circuit

**FILED**
May 8, 2017

Lyle W. Cayce
Clerk

In the Matter of CARL J. SELENBERG,

>   Debtor.

-----------------------------------------------------

CARL J. SELENBERG,

>   Appellant,

v.

DIANNE BATES,

>   Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before PRADO, HIGGINSON, and COSTA, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

This appeal involves a bankruptcy dispute between Debtor and Appellant Carl J. Selenberg and Appellee Dianne P. Bates. The bankruptcy court held that a promissory note Selenberg gave to Bates was a nondischargeable debt under 11 U.S.C. § 523(a)(2)(A). The district court affirmed. On appeal, Selenberg argues that the bankruptcy court erred in

No. 16-30649

concluding that the requirements for nondischargeability under § 523(a)(2)(A) were met. We AFFIRM.

## I. BACKGROUND

In 2008, Bates was seriously injured in an accident. Bates retained an attorney, Robert Faucheux, to represent her in bringing a personal injury lawsuit, but Faucheux failed to file the suit before the prescriptive period had run. Bates then retained another attorney, Selenberg, to represent her in bringing a malpractice claim against Faucheux. But in another unfortunate series of events, Selenberg failed to properly file Bates's malpractice suit against Faucheux before the prescriptive period had run, and the case was ultimately dismissed.

In early December 2011, Selenberg informed Bates that her case had been dismissed, and he told her that he had no malpractice insurance and no money with which to compensate her. On December 15, 2011, Selenberg met with Bates to discuss her potential malpractice claim against him. He only agreed to this meeting after Bates assured him that she did not intend to hire another attorney. Selenberg offered to give Bates a promissory note in the amount of $275,000 plus attorneys' fees of up to 25% of the value of the note. He explained that one of his cases might pay out in the future and that he might be able to compensate Bates for her loss at that point. According to Selenberg, Bates would have five years to file suit to collect on the note, whereas she would only have one year to bring a malpractice claim against him. Selenberg also told Bates that if she filed an attorney disciplinary complaint against him, she would never recover anything from him. Bates accepted the offer, and shortly thereafter, Selenberg sent her the promissory note.

Selenberg never made any payments on the note. On June 19, 2012, Bates filed a disciplinary complaint against Selenberg with the Louisiana

No. 16-30649

Office of Disciplinary Counsel. On November 19, 2013, almost two years after she received the promissory note from Selenberg, Bates filed suit to collect on the note in Louisiana state court. At that point, the prescription period for her malpractice claim against Selenberg had run. On February 25, 2014, Selenberg filed for Chapter 7 bankruptcy, staying the state court case. Bates then filed this adversary proceeding seeking to have the promissory note declared nondischargeable under 11 U.S.C. § 523(a)(2)(A)–(B). Following a bench trial, the bankruptcy court held that the debt was nondischargeable under § 523(a)(2)(A). The district court affirmed, and Selenberg timely appealed.

## II. STANDARD OF REVIEW

"When a court of appeals reviews the decision of a district court, sitting as an appellate court, it applies the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *In re Jacobsen*, 609 F.3d 647, 652 (5th Cir. 2010) (quoting *Kennedy v. MindPrint* (*In re ProEducation Int'l, Inc.*), 587 F.3d 296, 299 (5th Cir. 2009)). "Accordingly, we review conclusions of law de novo and findings of fact for clear error." *In re Ritz*, 787 F.3d 312, 315 (5th Cir. 2015), *rev'd and remanded on other grounds sub nom. Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581 (2016). "Under a clear error standard, this court will reverse only if, on the entire evidence, we are left with the definite and firm conviction that a mistake has been made." *In re Am. Hous. Found.*, 785 F.3d 143, 152 (5th Cir. 2015) (quoting *Morrison v. W. Builders of Amarillo, Inc.* (*In re Morrison*), 555 F.3d 473, 480 (5th Cir. 2009)). In reviewing the bankruptcy court's findings of fact, we must also bear in mind that "the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard." *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

No. 16-30649

## III. DISCUSSION

Section 523(a)(2)(A) provides that an individual debtor will not be discharged "from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." The bankruptcy court found that when Selenberg gave Bates the promissory note, the parties entered into an "agreement or settlement that bought [Selenberg] almost two years of time without being sued by Mrs. Bates." The court also held that Selenberg had a duty under Louisiana Rule of Professional Responsibility 1.8(h) to inform Bates of the desirability of seeking independent legal counsel before entering into this agreement. According to the bankruptcy court, by failing to disclose this information to Bates, Selenberg engaged in actual fraud within the meaning of § 523(a)(2)(A). Selenberg appears to make two basic contentions on appeal: (1) he did not receive an extension of credit from Bates; and (2) he did not use actual fraud to obtain any such extension of credit.

### A.     Extension of Credit

Selenberg first argues that he did not receive an extension of credit from Bates. Courts have stated that "[a]n extension, within the meaning of § 523(a)(2), is 'an indulgence by a creditor giving his debtor further time to pay an existing debt.'" *In re Gerlach*, 897 F.2d 1048, 1050 (10th Cir. 1990) (quoting *Takeuchi Mfg. (U.S.), Ltd. v. Fields* (*In re Fields*), 44 B.R. 322, 329 (Bankr. S.D. Fla. 1984)); *accord In re Rollins*, No. 06-10549, 2007 WL 2319778, at *6 (Bankr. E.D. La. Aug. 10, 2007). In other words, the Bankruptcy Code "protects the creditor who is deceived into forbearing collection efforts." *In re Marx*, 138 B.R. 633, 636 (Bankr. M.D. Fla. 1992); *accord In re Gerlach*, 897 F.2d at 1050; *In re Rollins*, 2007 WL 2319778, at *6.

4

No. 16-30649

In *Marx*, after a creditor demanded that a delinquent account be brought current, the debtor gave the creditor "a promissory note secured by a mortgage on commercial property" owned by the debtor. 138 B.R. at 635. In exchange for the note, the creditor "agreed not to take legal action to collect [the debtor's] account and agreed to extend additional credit." *Id.* The district court in that case concluded that the creditor had received an extension of credit within the meaning of § 523(a) when the debtor executed the promissory note. *Id.* at 636–37. Similarly, in *Gerlach*, an owner of a John Deere dealership arranged for various parties to enter sham purchase contracts for equipment. 897 F.2d at 1049. Though the contracts were ultimately rejected by John Deere, the dealership received temporary credit for the sales against the dealership's debts to John Deere. *Id.* The Tenth Circuit held that each contract resulted in an extension of credit under § 523(a) because the "fraudulent contract had its intended effect of giving the dealership more time in which to pay the amount of the . . . credit." *Id.* at 1050.

Likewise, in the instant case, the promissory note that Selenberg executed had its intended effect of giving him more time to pay. Selenberg contends that he gave the promissory note to Bates as an "option"—Bates could file a malpractice suit against him within one year, or she could wait up to five years to collect on the promissory note. However, the bankruptcy court found that Selenberg gave Bates the promissory note in order to induce her to forego any attempts to pursue a malpractice claim against him. This was supported by Selenberg's testimony that he gave Bates the promissory note to "facilitate the chance of [his] obtaining some money to pay her by extending the time that she would have to file suit." Accordingly, we hold that Selenberg received an extension of credit from Bates when she agreed to accept the promissory note.

## B.    Actual Fraud

Selenberg also argues that the bankruptcy and district courts erred in concluding that the extension of credit was obtained by actual fraud. This Court has stated that actual fraud may be proven by showing:

> (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained losses as a proximate result of the representations.

*In re Ritz*, 787 F.3d at 319 (emphasis removed) (quoting *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995)).[1] Selenberg contends that (1) he did not make any false representations, (2) he did not intend to deceive Bates, and (3) Bates did not sustain any losses as a proximate result of his representations.[2]

### 1.  *False Representation*

Selenberg argues that he did not make any false representations to Bates. For one, he notes that he accurately stated that he had no funds or assets to pay Bates. But the bankruptcy court based its decision on Selenberg's failure to disclose material information, not on overt statements he made. This Court and others "have overwhelmingly held that a debtor's silence regarding a material fact can constitute a false representation actionable under section

---

[1] On appeal in *Ritz*, the Supreme Court held that "actual fraud" encompasses "fraudulent conveyance schemes, even when those schemes do not involve a false representation." 136 S. Ct. at 1590. On remand, this Court stated that "[t]o the extent that . . . prior Fifth Circuit cases required that a debtor make a representation in order for a debt to be nondischargeable under § 523(a)(2)(A), those cases are effectively overruled by the Supreme Court's decision in this case." *In re Ritz*, 832 F.3d 560, 565 n.3 (5th Cir. 2016). Although a false representation is no longer *required*, actual fraud can still be proven by showing that the debtor in fact made a false representation.

[2] Selenberg does not appear to take issue with the bankruptcy court's conclusion that Bates relied on Selenberg's representation.

523(a)(2)(A)." *In re Van Horne*, 823 F.2d 1285, 1288 (8th Cir. 1987) (collecting cases), *abrogated on other grounds by Grogan*, 498 U.S. at 291; *accord In re Mercer*, 246 F.3d 391, 404 (5th Cir. 2001). "When one has a duty to speak, both concealment and silence can constitute fraudulent misrepresentation; an *overt act* is *not* required." *In re Mercer*, 246 F.3d at 404.

The bankruptcy court found that Selenberg was Bates's attorney, and "as such, he was required to abide by the Louisiana Rules of Professional Conduct." Rule 1.8(h)(2) provides that a lawyer shall not "settle" an actual or potential malpractice claim "with an unrepresented client or former client unless that person is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel in connection therewith." The bankruptcy court found that Selenberg "concocted [an] agreement or settlement that bought him almost two years of time without being sued by Mrs. Bates." Because there was "absolutely no evidence that [Selenberg] ever advised Mrs. Bates, either orally or in writing, to seek independent counsel" prior to entering this agreement, the court held that Selenberg failed to fulfill his duty to disclose under Rule 1.8(h) and thereby made "a false representation for purposes of § 523(a)(2)."

The bankruptcy court's approach is consistent with cases from other circuits. In one case, an attorney received construction services from a client and later gave the client a promissory note for the amount owed. *In re Young*, 91 F.3d 1367, 1370 (10th Cir. 1996). The Tenth Circuit held that the attorney made false representations under § 523(a)(2)(A) by failing to inform the client of "information that the New Mexico Rules of Professional Conduct required him to disclose," including "the potential conflicts of interest involved" in the transaction. *Id.* at 1373–75. In another case, an attorney borrowed money from his client without advising the client of "the adverse nature of their relationship" or the client's "right to seek independent legal advice." *In re*

*Tallant*, 218 B.R. 58, 61, 65 (B.A.P. 9th Cir. 1998). Because this conduct violated California's rules of professional responsibility and the attorney's fiduciary responsibilities to his client, the bankruptcy appellate panel held that the attorney "misrepresented the legal protections afforded" to the client and thereby made a "false representation" under § 523(a)(2)(A). *Id.* at 65–66.

Selenberg argues that he did not violate Rule 1.8(h)(2) because he did not settle the malpractice claim with Bates. He contends that the promissory note simply gave Bates an additional means of recovering from him.[3] It is true that both Selenberg and Bates testified during trial that they never signed a formal settlement agreement. However, evidence in the record supports a finding that Selenberg and Bates effectively settled the malpractice claim. In the letter notifying Bates that her case was dismissed, Selenberg stated, "I am trying to come up with an idea so that I can pay you the value of the case." Bates later testified that during her meeting with Selenberg, they discussed "what went wrong, what happened," and "what was he going to do" to "compensate [her] for [her] lost wages, the pain and suffering, the medication, the hospital bills." Selenberg also advised Bates that it was in her best interest to accept the promissory note and that the promissory note would place her in a better position than a malpractice suit.

After considering these facts, we conclude that the bankruptcy court did not clearly err in finding that the parties effectively settled the malpractice

---

[3] Selenberg does not cite any legal authority in support of his assertion that an attorney and client must actually settle a malpractice claim in order to trigger Rule 1.8(h)(2)'s disclosure obligations. On the contrary, Louisiana law suggests that *attempts* to settle a malpractice claim trigger an attorney's disclosure obligations. *See, e.g.*, *In re Lester*, 26 So. 3d 735, 738, 744 (La. 2010); *In re Petal*, 972 So. 2d 1138, 1139–42 (La. 2008); *In re Thompson*, 712 So. 2d 72, 73–74 (La. 1998); *In re Elbert*, 698 So. 2d 949, 949–50 (La. 1997). Nevertheless, because we hold that the district court did not clearly err in finding that the parties effectively settled the claim, we need not reach the issue of whether the parties' negotiations were themselves sufficient to trigger Rule 1.8(h)(2).

claim. Moreover, the district court was correct in concluding that Selenberg had an ethical duty to advise Bates in writing of the desirability of seeking independent legal counsel before settling the malpractice claim. He did not do so. Thus, we hold that Selenberg violated Rule 1.8(h)(2) and thereby made a false representation under § 523(a)(2)(A).

### 2. Intent to Deceive

Selenberg next contends that any false representations were not made with the intent and purpose to deceive Bates. "An intent to deceive may be inferred from 'reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation.'" *In re Acosta*, 406 F.3d 367, 373 (5th Cir. 2005) (quoting *In re Norris*, 70 F.3d 27, 30 n.12 (5th Cir. 1995)), *abrogated on other grounds by Ritz*, 136 S. Ct. at 1581. After weighing the evidence, the bankruptcy court concluded that Selenberg's "main concern was to convince Mrs. Bates that taking the promissory note was her only option" and that his "primary intent was to buy some time and to keep himself out of trouble."

Selenberg argues that he clearly did not have the requisite intent to deceive because he was truthful in telling Bates that he had no assets with which to pay her. We find this argument unpersuasive. Although Selenberg was truthful with Bates about his financial situation at the time, he did not advise her of the desirability of seeking independent counsel. On the contrary, he only agreed to meet with Bates after being assured that she had not hired another attorney. Furthermore, Selenberg suggested that Bates had few options for recovering from him and thereby convinced her not to sue him for malpractice. Yet as the district court noted, other options, such as a consent judgment, "may very well have been available" and likely "would have put her in a much better legal position than the unsecured note." Selenberg also led Bates to believe he might be able to pay her in the future, even though that

9

possibility was remote. These actions all suggest that Selenberg intended to deceive her.

Selenberg also contends that he "could not have made the statements with the intent to deceive since the promissory note provided for Selenberg to pay a 25% attorney fee," "thereby insuring Bates that she would recover the full amount of $275,000.00" even after paying attorneys to assist in collecting on the note. But the fact that the promissory note provided for attorneys' fees was essentially meaningless given that Selenberg knew there was a significant likelihood he would never be able to pay Bates the full $275,000, not to mention the additional attorneys' fees. Accordingly, we hold that the bankruptcy court did not clearly err in finding that Selenberg acted with intent to deceive Bates.

### 3. *Losses as a Proximate Result of Selenberg's Representation*

Finally, Selenberg argues the bankruptcy court erred in concluding that Bates sustained a loss or that any loss suffered was a proximate result of Selenberg's representation. Yet Selenberg does not point to any authority in support of his arguments. The bankruptcy court held that Bates "lost her chance to pursue [Selenberg] on a malpractice action" because Selenberg "persuaded her to take the note and . . . convinced her that pursuing a malpractice action against him would be futile." Thus, the court concluded that Bates sustained a loss as a proximate result of Selenberg's false representation.

Selenberg first contends that the monetary value of the promissory note exceeded the value of Bates's malpractice claim against Selenberg because the promissory note included an additional amount for attorneys' fees. In this way, Selenberg seems to suggest that Bates received a benefit (rather than sustaining a loss) when she received the promissory note. But Bates did not receive any benefit at all because Selenberg never obtained the funds to pay her. Moreover, Selenberg subsequently sought to have the debt discharged in

bankruptcy and to eliminate any rights bestowed by the promissory note. Next, Selenberg points out that Bates testified that she did not give up anything in accepting the promissory note. However, Bates's opinion on this matter is not dispositive. It seems clear from the record that Bates did not fully appreciate that she was forgoing the opportunity to recover from Selenberg by accepting the promissory note and declining to pursue a malpractice claim against him.

Selenberg also seems to argue that any loss Bates sustained actually occurred as a result of Selenberg's failure to properly litigate the malpractice case against Faucheux, not as a result of Selenberg's false representation. However, case law directly contradicts this assertion. In *Young*, the Tenth Circuit held that the client "sustained a loss, which satisfies the final element under § 523(a)(2)(A)," because the client "never received payment on [the attorney's] promissory note." 91 F.3d at 1375. Like the client in *Young*, Bates never received payment on the promissory note. Furthermore, Bates lost the opportunity to pursue her malpractice claim against Selenberg because she relied on Selenberg's advice that she would be more likely to recover if she bypassed a malpractice suit and sought to collect on the promissory note at a later date. Accordingly, the bankruptcy court correctly concluded that Bates sustained a loss as a proximate result of Selenberg's false representation.

## IV. CONCLUSION

For the reasons discussed above, we hold that the bankruptcy court did not err in holding that Selenberg obtained an extension of credit from Bates by actual fraud. Therefore, we AFFIRM the bankruptcy court's conclusion that the debt was nondischargeable under § 523(a).

11